KINKEAD *v.* HOLLISTON MILLS.

(*Nashville,* December Term, 1936.)

Opinion filed December 15, 1936.

J. H. HODGES, of Knoxville, for plaintiff in error.

WORLEY, HAUK & MINTER and T. A. DODSON, all of Kingsport, for defendant in error.

MR. JUSTICE Cook delivered the opinion of the Court.

The petitioner, alleging the death of her husband was caused by accident arising out of and in the course of the employment, sued his employer for an award under the Compensation Act. The employer denied liability, averring that the employee's death was not by accident arising out of the employment, but the result of a personal difficulty.

The employee, Benjamin H. Kinkead, was felled by a blow from the fist of Bill Sanders, a fellow employee. The fall upon the concrete pavement produced a skull fracture and resulting death. The trial judge found that death was caused by accident arising out of and in the course of employment and awarded compensation. Defendant appealed and insists that the judgment of the trial court is not supported by the evidence.

Kinkead and Sanders were employed as watchmen at Holliston Mills, but worked on separate shifts. Neither had priority or right of control over the other and both were under the direction of their superior, Mr. O. R. Huber.

April 27, 1935, Kinkead's shift was due to end at 4 P. M., and expecting Sanders, on the next shift, to relieve him, made a business engagement for 4:30 P. M. Sanders spent the early afternoon playing baseball and did not appear to relieve Kinkead until after 5 o'clock. Under the contract of employment and by the rules of the employer, the watchman on duty was required to remain until relieved by his successor and for the overtime receive the pay that would have gone to the delinquent watchman.

Kinkead was prevented by the delay of Sanders from keeping what he expected to be a profitable business engagement. By Carl Sneed and Pleas Quarry it is

shown that Kinkead was complaining about the tardiness of Sanders. According to Sneed, Kinkead said he had called the s. o. b. three times and the last time he was eating his supper; and according to Quarry, Kinkead said he was not going to work any more overtime for the dirty rascal. Their testimony indicates Kinkead's state of mind a few minutes before Sanders appeared at the door and was let in. A personal difficulty immediately followed.

When Elmer Harkleroad and Quarry, who had entered the bathroom a few minutes before, returned to the door, Sanders was carrying a pan of water for use in bathing Kinkead's head and face and Kinkead was lying unconscious on the concrete pavement outside. And Sanders said, "I have hurt Kinkead bad but Lord knows I didn't mean to do it." The only other evidence of what occured between the time Carl Sneed met Sanders going to the door and Pleas Quarry and Harkleroad entered the bathroom and after a few minutes came out and saw Kinkead unconscious is disclosed by the testimony of Sanders at pages 85, 87, 88, and 92 of the record.

Statements attributed to Sanders by Policeman Charlie Lineback and another witness do not materially contradict him. The substance of Sanders' testimony is that Kinkead was mad when he opened the door and after Sanders' entry complained about his tradiness. They had a controversy and Kinkead invited Sanders outside, and when Sanders refused to go called him a yellow s. o. b. for not wanting to fight and then, according to Sanders, struck at him, and when Sanders returned the blow Kinkead was knocked to the sidewalk and the fall fractured his skull.

The undisputed evidence shows that Kinkead and Sanders engaged at least in a voluntary fight. According to Sanders' testimony he acted altogether in his necessary self-defense, and his testimony is not contradicted.

■ The fact that injury resulted from an assault by Sanders would not preclude a recovery. But there could be no award for injury in a difficulty personal to employees if the difficulty was unrelated to their employment or not in furtherance of their employer's business. *Early-Stratton Co.* v. *Rollison,* 156 Tenn., 256, 260, 300 S. W., 569; *Chamber of Commerce* v. *Turner,* 158 Tenn., 323, 13 S. W. (2d), 318; *McConnell* v. *Lancaster Brothers,* 163 Tenn., 194, 42 S. W. (2d), 206; *Forbess* v. *Starnes et al.,* 169 Tenn., 594, 89 S. W. (2d), 886.

■ Here the undisputed evidence shows that the accidental death of Mr. Kinkead had its origin (1) in Kinkead's desire to be relieved from duty by Sanders promptly at 4 P. M. so he could meet an outside business engagement at 4:30. (2) In Kinkead's anger aroused by Sanders' delinquency and failure to appear at the hour expected. (3) And the quarrel and personal difficulty because of the delinquency of Sanders in which Sanders knocked Kinkead to the sidewalk.

The motive that prompted Kinkead to the anger attributed to him by the witnesses related altogether to his personal affairs and was disassociated from the business of his employer. He lost nothing out of his employment by the delinquency of Sanders, for the compensation that would have otherwise gone to Sanders inured to Kinkead. He had no authority over Sanders and it was no part of his duty to discipline him for the delay. By the terms of the employment Sanders' delay in re-

porting promptly was not a breach of duty to the employer, for, as stated, the contract of employment required the watchman Sanders was to succeed to remain on duty until he appeared and the watchman on duty received the pay. Under such facts and circumstances it cannot be reasonably concluded, even from strained inferences, that the death of Mr. Kinkead had its origin in acts done to promote the employer's business, to protect the employer's property, or to assert the employer's rights.

Reversed and dismissed.