CHAMBER OF COMMERCE, *et al. v.* MRS. DENNIE TURNER.

(*Nashville.* December Term, 1928.)

Opinion filed February 9, 1929.

HUME & DAVIS, for plaintiff in error.

GOODPASTURE & CARPENTER, for defendant in error.

MR. JUSTICE SWIGGART delivered the opinion of the Court.

From an award of compensation to plaintiff for the death of her husband, the employer and his insurer have appealed in error.

The single question presented by the appeal is whether the deceased husband, Turner, came to his death by an accident arising out of his employment. It is not denied that the death was accidental, *Stratton Co.* v. *Rollison,* 156 Tenn., 256, nor that it occurred in the course of the employment.

Taking that view of the evidence which is most favorable to the plaintiff, as we are required to do on the appeal in error of the defendants, the facts are these. Turner was employed by the Nashville Chamber of Commerce as a cook, with a chef as his superior. The Chamber of Commerce sold to George Mayo the right to collect all garbage from the kitchen where Turner was employed. Mayo sent his son, George Mayo, Jr., and a boy named Griffin to collect the garbage. They were entitled under the contract to take only the contents of

garbage cans placed in the kitchen. Griffin took a plate of chicken bones from a shelf near one of the cans, and emptied the plate into the can. The plate of bones had been set aside by Turner with the intention to carry them home. When Griffin took them, Turner sought to retrieve the bones from the garbage can, and was assaulted by Mayo, or by Griffin and Mayo, and a difficulty ensued which was terminated by the interference of others. Mayo and Griffin left without taking the garbage, and later returned with the elder Mayo. The son pointed out Turner to his father, and both of them assaulted Turner with their fists. Turner struck Mayo, Senior, with a glass jar he was carrying, and thereupon Mayo shot and killed Turner.

Sometime before the killing of Turner, young Mayo had shown resentment at another cook for holding out some scraps of bread from the garbage cans for his own use, and had threatened that cook with death. Since that time he had maintained a sullen attitude toward the kitchen employees, his testimony indicating that he was conscious of humiliation because of his occupation.

It is contended that the difficulty between the Mayos and Turner cannot be said to have arisen out of Turner's employment, because Turner was acting in his own interest in seeking to retrieve the chicken bones and was not acting in the interest of his employer.

(1) This contention is to be tested by the rule contained in the following quotation from *Carmichael* v. *J. C. Mahan Motor Co.*, 157 Tenn., 613, 11 S. W. (2d), 672:

"It is said an injury arises out of the employment when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work is required

to be performed and the resulting injury. *Patten Hotel Co. v. Milner,* 145 Tenn., 638, 238 S. W., 75, citing the *McNicol Case,* 215 Mass., 497, 102 N. E., 697, L. R. A., 1916A, 306, and *Connell v. Daniels Co.,* 203 Mich., 73, 168 N. W., 1009, 7 A. L. R., 1304.''

When Griffin took the chicken bones from the shelf where Turner had placed them, they were in the possession of Turner's employer, the Chamber of Commerce. While Turner intended to appropriate them to his own use by subsequently taking them home with him, he had not removed them from the premises, and had merely set them aside so that they would be available when he should be ready to leave. Griffin's action was not authorized by the contract between Mayo and the Chamber of Commerce; and the inference is clearly warranted that Turner's employment by the Chamber of Commerce was his own justification for his effort to recover the property which had been wrongfully taken from his employer. The specific intent which characterized Turner's action was to recover the property wrongfully taken from his employer. His purpose or desire to take the bones home with him was the motive which impelled him. Intent and motive are not synonymous. ''Intent is often distinguishable from the motive which led to the formation of the intent. An intent often exists where a motive is wholly wanting. 'Motive' is the moving cause which induces action; it has to do wholly with desire; and 'intent' is the purpose or design with which an act is done, and involves the will.''

*(2)* '' 'Motive' is the state of feeling impelling toward an act, and 'intent' is the mental state accompanying the act.'' 33 C. J., 168-169; *People v. Molineux,* 168 N. Y., 264, 297; 62 L. R. A., 193, 244-245; 61 N. E., 286.

Viewed in this light, it is our conclusion that the evidence establishes the requisite causal connection between the employment of Turner and the events which resulted in his death. The fact that the action taken by him as an employee may have been impelled by a personal motive does not, in our opinion, prevent the application of the compensation statute.

*(3)* It is not essential that the employee be engaged in an act directly beneficial to his employer in order that the resulting injury may be said to have arisen out of the employment. *Johnson Coffee Co.* v. *McDonald,* 143 Tenn., 505; *Tenn. Chem. Co.* v. *Smith,* 145 Tenn., 532.

The judgment of the circuit court will be affirmed.