UNITED STATES FIDELITY AND GUARANTY COMPANY *v.* MRS.
MINNIE R. BOOTH.

(*Nashville,* December Term, 1931.)

Opinion filed February 13, 1932.

HUME & ARMISTEAD and L. M. DAVIS, for plaintiff in error.

JOHN R. AUST and BELL & HIBBETT, for defendant in error.

MR. JUSTICE SWIGGART delivered the opinion of the Court.

The contract of insurance, which is the test of liability in the case before us, was issued by the United States Fidelity and Guaranty Company, on July 1, 1929, to continue in force one year. The insured was described in the body of the contract as "this employer, named and described in the declarations forming a part hereof." The insurer obligated itself "to pay promptly to any person entitled thereto," any sum due because of obligations of the employer under the Workmen's Compensa-

tion Law, and also to indemnify "this employer" against loss by reason of liability for damages on account of injuries to employes.

The "employer" was named and described in the "declaration" of the contract as a "copartnership," doing business as J. B. Deeds and Son, and composed of J. B. Deeds, E. A. Deeds, and E. T. Booth.

The interest owned by E. T. Booth in the partnership was equivalent to three per centum of the whole. This interest was sold by Booth to J. B. Deeds, the senior partner, on April 2, 1930, and thereafter Booth's connection with the firm was that of employe only. No notice of this change in the personnel and ownership of the partnership was given to the insurer, until after the accident involved herein. As such employe, Booth was fatally injured on May 1, 1930, by accident arising out of and in the course of his employment, so that the partnership, composed of J. B. and E. A. Deeds, was obligated to pay compensation to his surviving widow and child, under the provisions of the Workmen's Compensation Act, Acts 1919, chapter 123.

This action is prosecuted by the widow to enforce the statutory obligation against the insurer, under the contract above described.

Liability is resisted by the insurer upon the ground that its contract of insurance was in the nature of a guaranty "since it is an undertaking for the payment of the liability of another to a third party," and the withdrawal of a partner is generally held to terminate a contract guaranteeing the firm's liabilities. It is also contended for the insurer that the status of Booth as a partner was fixed in the contract, and that without notice

and consent he could not thereafter acquire the status of an insured employe under the same contract.

We are of opinion that the contract of the insurer is not one of guaranty as that term is defined in the cases. The definition in *Rhodes* v. *Morgan,* 60 Tenn., 360, cited by the insurer herein, is: "A guaranty is an undertaking to answer for the payment of some debt, or the performance of some contract or duty of another, in case of the failure of such other to pay or perform." The obligation of a guarantor is collateral or, at least, secondary, and not primary. Since the obligation is to pay or perform only on the default of another, the identity, solvency, and integrity of the principal obligor are matters of primary importance in guaranty contracts. The assumed obligation of the insurer to pay, without regard to default on the part of the firm designated as the employer, and the fact that payment by the insurer is an indemnity to the employer for which the insurer is entitled to no reimbursement, conclusively distinguish the contract before us from a guaranty contract.

In *American Mutual Liability Insurance Co.* v. *Patrick,* 157 Tenn., 618, 11 S. W. (2d), 872, we held that sections 44 and 45 of the Compensation Act (Acts 1919, chapter 123) "must be read into the insurance carrier's policy issued under its provisions," and said: "The liability is not that of suretyship merely, for the insurer assumed liability for any award that might be made against the employer."

An insurance contract of the kind here involved possesses characteristics and incidents not common to other types of insurance, and its peculiar provisions and characteristics must be construed and applied with especial reference to the subject and nature of the con-

tract. There is a considerable conflict of authority with respect to the effect on a contract of fire insurance of a transfer between partners of title to the property insured. But obviously this contract of indemnity insurance is wholly different from a contract insuring property against loss by fire. Our case of *Hobbs & Henly* v. *Memphis Ins. Co.,* 33 Tenn. (1 Sneed), 444, discussed on the briefs of counsel, does not seem to us controlling nor in point.

■ The cases of *Geitner* v. *U. S. F. & G. Co.,* 233 N. Y., 378, Aff'd, 251 N. Y., 205, 167 N. E., 222, and *Hartigan* v. *Casualty Co. of America,* 227 N. Y., 175, 124 N. E., 789, are cited on the brief of the insurer for the proposition that "insurance on behalf of a named partnership composed of named individuals was an undertaking on behalf of that partnership constituting, practically speaking, an entity." *Hartigan* v. *Casualty Co., etc., supra,* deals with a contract of automobile liability insurance, and holds that such a contract issued to a partnership did not protect the individual members from liability for the result of an accident occurring while the insured partnership automobile was used on business of the partners in which the partnership insured was not interested. The Court of Appeals of New York viewed the contract as made by the insurer with the insured partnership as "a legal entity, separate and distinct from the partners therein," at least for the purpose of determining the *thing,* as distinguished from the *persons,* insured. The Court of Appeals concluded: "So here we think that among business men a distinction is made between the firm of Hartigan & Dwyer, and the members who compose it and that the policy is not broad enough to cover

the liability of the members of the firm for which the firm itself was not liable.''

In *Kelly* v. *London, etc., Co.*, 70 Mo. App., 623, 71 S. W., 711, a partnership was insured against liability for injuries to its employes. One of the two partners was denied indemnity for an injury to an employe for which he alone was adjudged liable, on the ground that his liability was personal to him and not that of the partnership. Dealing with the particular contract, the court said: ''A partnership is a separate legal entity from the individual members composing it.''

We do not find it necessary to consider or approve the accuracy of the reference to a partnership as a ''separate legal entity.'' Certainly the expression is not accurate for all purposes. See the discussion of the matter in 20 R. C. L., 804-805 (''Partnership,'' sec. 6). The inference we draw from the cases cited, and from many others of like import, is that in construing and giving effect to contracts made by and with partnerships, it may appear from the subject matter or otherwise that the parties dealt with and treated the partnership as if it were an entity, separate and distinct from the individuals composing it; and to the extent that this is so, the intention of the parties can only be given effect, in the enforcement of the contract, by judicial recognition of the partnership entity as contemplated by the parties.

 Treating the contract before us as having been made with the partnership of J. B. Deeds and Son as an entity, respecting the business carried on by that firm, the question for determination is whether the withdrawal of one of the three partners, by sale of his interest to one of the other two, wrought a change of identity in one of the contracting parties which terminated the liability

of the other party, the insurer. We think this question should be answered in the negative.

In the case of *Fidelity Union Casualty Co.* v. *Hammock*, —— Tex. Civ. App., ——, 5 S. W. (2d), 812, a contract of employer's liability insurance was issued to Aycock and Poole, described in the contract as composed of A. M. Aycock and R. H. Poole. At the time the contract was made A. M. Aycock was dead, and the business was being conducted by the surviving partner, Poole, and the heirs of Aycock. There was no question made of false or fraudulent representation made in the procurement of the contract. The court enforced the contract, holding: "It is clear, we think, that it was the intention of appellant in the issuance of the policy to cover the employes of the business managed by R. H. Poole, known by the name of Aycock and Poole, and that it was not concerned as to who, in fact, composed the partnership."

*Hoffman* v. *Aetna Insurance Co.,* 32 N. Y., 405, 88 Am. Dec., 337, is a leading case on the majority rule that the transfer of title to property from one partner to another does not render void a contract of fire insurance issued to the partnership and containing a provision against sale or conveyance of the property insured. The reasoning of the court is persuasive here. The court said:

"The policy in question having been issued to a mercantile firm, the company must be deemed to have had in view the fluctuating nature of a partnership business, and the changes of relative interest incident to that relation. These might be very important to the assured, though wholly immaterial to the risk. It is manifest that mere variation in the character and amounts of the interests of the assured as between themselves, did not constitute the mischief at which the proviso was aimed."

"The underlying principle of the prevailing view," as given by the text of 14 Ruling Case Law, p. 1121, from fire insurance cases, "is that each partner is interested in the whole property; and as the insurer contracted to insure the purchasing partner's interest in the whole property, the hazard is not increased because the purchasing partner has acquired a greater interest in the property by a transfer of his copartner's share."

Section 45 of the Workmen's Compensation Act, which we have heretofore said must be read into the insurance contract (*American Mutual, etc., Co.* v. *Patrick, supra*), directs that the contract contain an express agreement to promptly pay the benefits conferred by the Act to the persons entitled, and that "this obligation shall not be affected by any default of the insured for the injury or by any default in the giving of any notice required by such policy or otherwise." Pursuant to this statutory requirement, the contract contains the provision: "The obligations of *Paragraph One* (*a*) (the promise to pay compensation) foregoing are hereby declared to be the direct obligations and promises of the Company to any injured employe covered hereby, or, in the event of his death, to his dependents; and to each such employe or such dependent the Company is hereby made directly and primarily liable under said obligations and promises. This contract is made for the benefit of such employes or such dependents," etc.

The contract of insurance was entered into by the parties in recognition and furtherance of the policy of the law to make certain the payment of awards of compensation to injured employes. The contract should be construed with due regard to this purpose, especially in an action by the injured employe and his dependents. It

being a primary purpose of the contract to protect the employes of the business of the partnership, we can find no justification for holding that this protection was annulled and avoided by the mere withdrawal of one of the partners. Neither the essence of the contract nor the degree nor extent of the liability of the insurer was affected thereby.

The fact that the employe, for whose fatal injury compensation is here sought, was the former partner is a coincidence merely, without effect upon the liability of the insurer. The protection for which Booth contracted as a member of the partnership was against liability resulting from his partnership relation with the business. When he ceased to be a partner, that liability ceased, and he was no longer concerned with the contract of insurance as an employer. Upon his withdrawal from the firm, it could not have been a matter of concern to the insurer whether he or some other person was employed to do the work he was doing at the time he was injured. The contract of insurance continued in force, and upon assuming the status of an employe, Booth was entitled to the insurance protection contracted for the benefit of employes.

The judgment of the circuit court is accordingly affirmed.