CHARLES ELLIOTT v. ELLOITT BROTHERS *et al.*

(*Nashville,* December Term, 1931.)

Opinion filed July 23, 1932.

EARL A. BROWN and WM. LEECH, for plaintiff in error.

FRANK S. HALL, for defendant in error.

MR. JUSTICE SWIGGART delivered the opinion of the Court.

Charles Elliott filed his petition for an award under the workmen's compensation law against his employer, Elliott Brothers, a partnership, and its insurer, the United States Fidelity & Guaranty Company. On the hearing the circuit court dismissed the petition, the judgment reciting the finding of the court that the petition "is not well founded." Motion for a new trial was upon the ground that the proof established petitioner's contention that he had sustained an injury in the course of, and arising out of, his employment for which he is entitled to compensation. This motion having been overruled, petitioner has prosecuted his appeal in the nature of a writ of error to this court.

The facts are not controverted in the evidence, and the question argued by counsel here is whether the accident by which petitioner was injured arose in the course of and out of petitioner's employment by the partnership. It is not directly shown, but it is to be inferred from the record that Elliott Brothers is a partnership composed of three Elliotts and J. B. Murray. The partnership business is that of an automobile garage, filling station and repair shop. The petitioner is the father of the three Elliott partners, and was regularly employed in the repair shop, principally as a woodworker, for which he was paid wages of $20 per week. He is a carpenter

by trade. On some occasions he was sent outside the garage to do work which the firm had undertaken.

J. R. Elliott, the general manager of the business, one of the partners, was the owner of a house and lot in Dickson. Petitioner was injured while doing some repair work on this house, the injury having been caused by a splinter in a finger, causing infection, resulting in the loss of the finger and a fifty per cent loss of use of the left hand. The partnership was not interested in the house and the petitioner was doing the work at the instance of J. R. (Raymond) Elliott, the owner. He testified: "Raymond told me he wanted the work done. It was understood by other members. Mr. Murray usually looks after my work and always knows where I am, and what I am doing." On one other occasion he placed some screens in a house belonging to R. H. Elliott, another partner, also petitioner's son, and had done a little work for Murray.

Petitioner further testified:

"Q. Were you fixing the porch to suit Raymond Elliott, or to suit Mr. Murray and the rest? A. I was doing it for Raymond.

"Q. You were fixing it like Raymond wanted it and told you to? A. Yes.

"Q. If he had told you to fix it some other way you would have? A. Yes.

By Mr. Brown:

"Q. You stated he was general manager for Elliott Brothers? A. Yes.

"Q. Mr. Elliott, was Raymond paying Elliott Brothers for your time? A. I don't know about that part."

Elliott Brothers filed no answer to the petition. Raymond Elliott, for whom or at whose instance petitioner did the work which resulted in the injury, did not testify. Nor did R. H. Elliott, manager of the repair shop in which petitioner was employed, testify. It must be confessed that the absence of the testimony of these witnesses, obviously friendly to the cause of petitioner, creates an atmosphere suggestive of an unwillingness on the part of the petitioner to acquaint the court with all the facts material to the claim.

J. B. Murray, a partner of Elliott Brothers, serving as secretary and treasurer, testified that he knew of petitioner's work on the house of Raymond Elliott; that no record was made of such work and no payment to the firm was required; that if petitioner "did any work further than that for the firm it was agreeable." He further testified:

"A. Fletcher Elliott has charge of the repair shop repairing the cars and directs Mr. Elliott. If a man is out I know where he is.

"Q. This particular work was being done for Raymond and to suit him? A. I had no control of it.

"Q. Did Fletcher know anything about it? A. No.

"Q. It was being done to suit Raymond? A. Yes."

We think the trial judge was clearly justified on this evidence in finding that the firm of Elliott Brothers had no interest in nor connection with the work petitioner was doing at the time he was injured. It is perhaps unnecessary to fix upon a legal phrase to fit the situation, though the term "lent servant" urged by respondent is not inapplicable. It is impossible to ignore the fact that the petitioner was the father of three members of the

firm, as well as the servant of the firm, and that he was working on a building owned by his son, at the latter's request, when he was injured. The firm paid petitioner's wages but received nothing for the work done on Raymond's house. Both Raymond and petitioner departed from the business of the firm, and were not engaged in the business of the firm. We think the reasonable inference of fact is that petitioner was simply accommodating his son, relying on their relationship to the other members of the partnership to justify the petitioner in serving the individual purpose of his son on time for which he was paid by the partnership. No principle of law or equity would justify the imposition of liability on the firm for any consequence of their individual enterprise. We accordingly hold that petitioner's injury did not arise out of his employment by Elliott Brothers.

The contract of insurance under the workmen's compensation law is a contract of indemnity. *United States Fidelity & Guaranty Co.* v. *Booth,* 164 Tenn., 41, 45 S. W. (2d), 1075. There being no liability on the part of the employer, there is none on the indemnitor.

The judgment of the circuit court dismissing the petition is accordingly affirmed.