

C. W. Kᴇᴍᴘᴋᴀᴜ d/b/a C. W. Kempkau & Company,
etc., *v.* Bᴇᴜʟᴀʜ Cᴀᴛʜᴇʏ and Sʜᴇʟᴀ Sᴜᴛᴛᴏɴ.

(*Nashville,* December Term, 1954.)

Opinion filed March 11, 1955.

Rehearing denied April 7, 1955.

Cʟᴀᴜᴅᴇ Cᴀʟʟɪᴄᴏᴛᴛ, of Nashville, for plaintiffs in error.

18

Alfred Adams, Jr. and S. M. Glasgow, Jr., both of Nashville, for defendants in error.

Mr. Justice Swepston delivered the opinion of the Court.

This is a Workmen's Compensation case in which the dependent widow and a minor dependent child seek compensation for the death of John Cathey.

The facts are not in dispute. C. W. Kempkau d/b/a C. W. Kempkau & Company, was engaged solely in the business of selling and delivering building supplies and the deceased, John Cathey, was regularly employed as a truck-driver in the delivery of materials for said defendant.

Kempkau had in its employ a Mr. Harris who was a general foreman.

This Mr. Harris desired to move some furniture belonging to a domestic servant of his, and with that purpose

in view he arranged with Cathey and another truck-driver of Kempkau, to undertake the work for him in the afternoon of Saturday, January 16, 1954; he then arranged with Mr. Kempkau to borrow one of the Company trucks and to have Cathey drive the truck and the other employee to go along as a helper.

The truck-drivers of the Company customarily quit work at noon on Saturdays but on this Saturday they reported back to Mr. Harris after lunch and the three of them, Mr. Harris and the two other employees went out to Mr. Harris' home, obtained the furniture, brought part of it back to the Company warehouse where, with the permission of Mr. Kempkau, it was stored and delivered the rest of the furniture elsewhere, and then after Cathey had taken the helper home and had started back to the plant to return the truck to the Company's usual place of business, an accident occurred before he reached the Company plant in which the truck in some manner went out of Cathey's control and ran into a building causing injuries to Cathey from which he died.

Kempkau paid Mr. Harris nothing for the work that afternoon but he entered Cathey and the helper on the payroll and later the helper and the dependents of Cathey were paid for the three hours work done that afternoon.

Kempkau had no interest in the moving of this furniture, it was not a part of his regular business to do moving for anybody, although it does appear that on some previous occasions he had permitted employees to borrow his trucks for the purpose of hauling some of their own personal effects during regular working hours and had not made any deduction from their pay on account of the time in which they were carrying out their own personal missions. It appears also, that Mr. Harris had given each one of these men three dollars for helping him do this

moving which was in addition to the regular pay received from Kempkau.

On that set of facts the Trial Judge awarded compensation and the employer and his insurance carrier have appealed.

There are two defenses: (1) That the death of Cathey was not caused by or resulted from injuries by accident arising out of and in the course of his employment as an employee of Kempkau. (2) That if he was in the employ of Kempkau at the time of the accident his employment was casual.

The petitioners rely upon the facts that Cathey was in the regular general employ of Kempkau, was not on a personal mission for his own benefit, that he was on the payroll of Kempkau at the time he was killed, and his dependents received his pay for the afternoon's work, that he was working under Mr. Harris, his usual foreman, that Kempkau had given his permission for Harris to use the services of Cathey and that Cathey was returning defendant's truck to the yard by the most direct route when he was killed.

We are of opinion that the above facts are not controlling. In *Powell* v. *Virginia Construction Company,* 88 Tenn. 692, at page 702, 13 S. W. 691, at page 694, this Court adopted from an English case the following statement:

" 'When one person lends his servant to another for a particular employment, the servant, for anything done in that particular employment, must be dealt with as the servant of the man to whom he is lent, although he remains the general servant of the person who lent him.' "

In that case the question was whether the injured party was in the employ of his regular employer or in that of

an independent contractor, it appearing that the servant was selected and his wages paid by his regular employer but that control of his particular work was under the independent contractor to whom he had been loaned. The Court said:

"The question as to who originally employed the servant, or who pays him, is not always a conclusive test as to who was his master in and about a particular work upon which he was engaged." 88 Tenn. at page 701, 13 S. W. at page 693.

In *Wardrep* v. *Houston,* 168 Tenn. 170, 76 S. W. (2d) 328, a compensation case in which the question of a "loaned servant" was involved, Judge Green made the following statement:

"In this case the Massachusetts court [Scribner's Case, 231 Mass. 132, 120 N. E. 350, 3 A. L. R. 1178] refers to the well-established principle of the common law, which holds that an employee who is loaned to a special employer as distinguished from his general employer, and who assents to the change of employment, becomes the servant of the employer to whom he is loaned, and points out that this principle applies as well to cases arising under the Workmen's Compensation Act as to those at common law. To avoid such result the English Workmen's Compensation Act, St. 6 Edw. VII, c. 58, Sec. 13, provides that the general employer shall continue to be the employer, even though his servant be loaned. See, also, Schneider's Workmen's Compensation Law (2d Ed.) vol. 1, p. 213." 168 Tenn. at pages 175-176, 76 S. W. (2d) at page 330.

The Court then held that the servant was under the control of the employer to whom he had been loaned and

that employer, instead of his general employer, was liable to pay compensation.

*Owen* v. *St. Louis Spring Co.*, 175 Tenn 543, on pages 546-547, 136 S. W. (2d) 498, at page 499, another compensation case in which the defense of "loaned servant" was relied on, Judge Green said:

"It is frequently a matter of difficulty to determine whether an employee, in a particular instance, should be regarded as a loaned employee in the service of a special employer, or whether he should be regarded as remaining in the service of his general employer. A test running through our cases, although not always in terms noted, is indicated by the question 'In whose work was the employee engaged at the time?' "

In that case the Court concluded that the employee was still under the control of his general employer although he was to be paid, not by his general employer, but by the purchaser of the machinery which had been sold by his general employer under a contract for the installation and demonstration of same. The servant's regular employer was, therefore, liable for compensation, so that as said above, the question as to which one pays the wages is not determinative.

*Elliott* v. *Elliott Bros.*, 165 Tenn. 23, 52 S. W. (2d) 144, a compensation case, is quite analogous on facts to the instant case. The firm of Elliott Brothers was composed of the sons of the injured workman and a third party. The business of the firm was that of an automobile garage, filling station and repair shop. One son, J. R. Elliott, the general manager of the business, owned a house and lot individually on which the father was working at the time he was injured. Although the firm had no interest, whatever, in the work being done on J. R. Elliott's house, the

firm paid the wages of the father but received no benefit for the work done. Held, that petitioner's injury did not arise out of his employment by Elliott Brothers.

■ ■ With reference to the insistence in behalf of petitioners that the fatal accident occurred after the "loan mission" had been completed by delivering the helper to his home and that the deceased was acting for his general employer's benefit in returning the truck to the place of business of the general employer, we are of opinion that the loan transaction was not completed until the truck had been returned to its usual place of storage at the place of business of the owner. Such a view is contrary to the amenities of life, although confessedly the rule is much observed in the breach thereof. If this loan by Kempkau of the truck and the servants had occurred during the regular business hours of the general employer, under all of the authorities, the relationship of master and servant is suspended until the servant or property, as the case may be, is returned to the point where the same is available to the use of the master.

We are, therefore, of opinion that the injury in this case did not arise out of and in the course of employment of the general employer. The judgment below must be reversed and dismissed at costs of petitioners. It is unnecessary to discuss the second defense.