HELEN McADAMS

*v.*

DREW J. CANALE, d/b/a Canale Amusement Company,
and United States Fidelity & Guaranty Company.

(*Jackson,* April Term, 1956.)

Opinion filed July 20, 1956.

Rehearing Denied October 5, 1956.

John R. Gilliland, Ray W. Churchill, Memphis, Canale, Glankler, Montedonico, Boone & Loch, Memphis, of counsel, for appellant Helen McAdams.

Charles L. Neely, Memphis, for appellees.

Mr. Justice Burnett delivered the opinion of the Court.

This is a Workmen's Compensation case. Section 50-901 et seq., T.C.A. The trial court dismissed the action of the petitioner because it did not "arise out of" her employment. She has seasonably perfected her appeal, briefs have been filed and arguments heard. We now have the matter for disposition.

Since the facts in this case are undisputed the appeal presents a single question of law, to wit: Did the injuries received by the appellant arise out of her employment?

The appellant and her employer, Drew J. Canale were the only witnesses. Their testimony in effect establishes the facts as stated by the appellant in her brief.

"Appellant had been in the employ of Drew J. Canale for about five and one-half years before the accident. Canale was the sole owner of his business, and was doing business under the trade name of Canale Amusement Company. The nature of the business was operating coin operated record players and vending machines. Appellant's duties were many and varied. Her duties included bookkeeping, typing, secretarial work, buying records, attending to the banking, and doing considerable driving, both for business purposes and purposes personal to Canale and not connected with the coin operated machine business. At the time of her employment, it was understood and agreed that appellant would be called upon to perform the duties above enumerated, including considerable driving for both business and pleasure purposes, as her employer had previously injured his back and did not like to drive. During the entire time of her employment appellant had been called upon frequently to drive upon missions for her employer which were purely personal to him and not connected with his usual business.

"The trip in question was personal to her employer, but it was not personal to appellant. She had no interest whatsoever in the trip. She made the trip only because she was directed to do so by her employer."

"Appellant was under the orders and directions of her employer in making the trip. He directed the time of departure, the route, the stops to be made, and all other details."

As an illustration of the correctness of the summary above her employer testifies:

"A. She was to take care of all the bookkeeping, to do all the typing and other secretarial work, to buy records, do the banking and she was to get a Notary Commission so she would be in a position to execute the contracts which we have to take in our business. I explained to her her hours would not be the same because there would be occasions when she would have to go out in the evening to execute the contracts and perhaps work late to keep the work up.

"Q. During this period of approximately five and a half years, did she work overtime frequently to perform the duties necessary to complete all of the work incident to your business? A. Yes, and I explained to her in the beginning there would be times when I would want her to drive me and do personal missions for me such as shopping for birthday, wedding and Christmas gifts and other things of that nature. She drove my mother and other members of my family to Chicago to a funeral. She drove me to New Orleans on business and on this occasion I asked her to drive me to Yazoo City to the football game. She understood there would be times when she might be asked to do things not directly connected with the business. We never had any disagreement about that." R. pp. 75-76.

Pursuant to this direction of her employer and while they were on their way to Yazoo City, Mississippi they had an automobile accident in which Miss McAdams was rather severely injured. Her doctors bills ran over $2,000 and there is some permanent injury as a result of this wreck. Apparently the basis of the ruling made by the trial court was that he thought that the injuries did not

"arise out of" her employment and that they were thus not compensable unless they were incurred in carrying out some function of the employer's usual and customary business.

So thus we arrive at the very interesting question for solution. Here is an employee working for a one man company and who at his direction goes on a personal mission for him and while on this mission she is injured. Under such circumstances where the employer directs the employee to perform this mission is the injury received while on this mission compensable?

We have never had the direct question in Tennessee. There is a very full annotation dealing with this question in 172 A.L.R. pages 378 through 405, wherein cases from many jurisdictions are analyzed and the annotator concluded that whether or not cases of the kind are compensable depends upon the

"—relevant terms of the local workmen's compensation act; and the judicial and administrative construction thereof.

"—nature of the employer's business.

"status of the employer as

"(1) an individual owning the business as sole proprietor;

"(2) a partnership or unincorporated association;

"(3) a corporation.

"—nature of employee's regular duties.

"—nature of the task being performed when injury sustained.

"connection of the person benefited with the employing business, that is, whether he is its sole owner,

or an officer, manager, stockholder, or in any way interested therein.

"—whether such task is solely for private benefit of an individual or is partly of benefit to the employing business.

"—whether such tasks are customarily or only occasionally required.

"—who assigned employee to such task.

"—employee's knowledge or lack of knowledge of private nature of task.

"—where work performed.

"—when work performed (within or outside regular working hours).

"—how employee paid for such work.

"—whether employing business reimbursed by party benefited.

"—terms of employer's compensation insurance policy, and of statute pursuant to which insurance is carried, where insurer opposes the claim."

Our Act provides, Subsection (d), Section 50-902, T.C.A.

" 'Injury' and 'personal injury', shall mean any injury by accident arising out of and in the course of employment and shall include certain occupational diseases arising out of and in the course of employment which cause either disablement or death of the employee resulting from the occupational diseases named in sec. 50-1101."

■■ "Rising out of employment" refers to the origin of the injury, while "in the course of employment" refers to the time, place and circumstances. *Hendrix v.*

*Franklin State Bank,* 154 Tenn. 287, 290 S.W. 30, and others. The injury received must arise "out of" the employment as well as "in the course of" employment. *Thornton v. RCA Service Co., Inc.,* 188 Tenn. 644, 221 S.W.2d 954.

■ Where the employee acts for the employer's benefit the acts are usually held to arise out of the employment, if expressly, impliedly or reasonably authorized. *Tallent v. M. C. Lyle & Son,* 187 Tenn. 482, 216 S.W.2d 7.

Where, as here, the employee is doing what he or she is directed to do by the employer (in this instance sole employer) it seems reasonable that an injury which arose during the course of this employment that the employee was directed to do should be compensable. This Court intimated as much long ago when in *Leonard v. Cranberry Furnace Co.,* 150 Tenn. 346, 265 S.W. 543, 545, it said:

"It may be said that the test [that is of employment] is one of contract rather than of conduct. If the employee is within the contemplation of his contract, if he is doing that which by his contract, either expressly or by implication, is made his duty, then he is in the course of his employment, however, negligent his conduct may be."

■ The Court is holding in this case, among other things, that the word employment will be given a liberal rather than a restricted meaning. In the case now before us the employer plainly says that when he employed this employee her duties were to be many and varied including driving him on many personal missions. In the instant case she was driving him on a personal mission when she received this injury.

The appellant cites the case of *National Surety Corp. v. Kemp,* 217 Miss. 537, 64 So.2d 723, suggestion of error overruled 217 Miss 560, 65 So.2d 840, as being absolutely on all fours with the instant case and as supporting their theory on appeal. We have read this case, which was vigorously contested below as shown by the dissenting opinion. It is on all fours with the instant case and even one of far more reaching import than are the facts of this case if the employer is held liable herein for the injury received by this employee.

In the Kemp case, Kemp was employed by a partnership composed of one Kent and Dakin. Under the terms of employment Kemp was paid so much per month and was to be in full charge of the gin operations. During the off season it was understood that he was to do such work as directed to do by either of the partners. One of these partners was running for Sheriff of a Mississippi County and he directed Kempt to put up a campaign banner in another town. Kemp, while doing so, was injured as a result of electrical burns and a fall. The Mississippi Supreme Court held that the injuries were compensable. The Mississippi Act, Laws 1948, c. 354 as amended, is very similar to ours and the defense made in that case is the same as made in the instant case.

In the Kemp case the Mississippi Court cites Snyder on Workmen's Compensation, Larson on Workmen's Compensation and many cases supporting its viewpoint. That Court quotes from Larson on Workmen's Compensation, Vol. 1, Sec. 27.40, page 421, as follows [217 Miss. 537, 64 So.2d 725]:

" 'When any person in authority directs an employee to run some private errand or do some work outside his normal duties for the private benefit of the

employer or superior, an injury in the course of that work is compensable. * * * The technical reason for these holdings is simply that, whatever the normal course of employment may be, the employer or his supervisory staff have it within their power to enlarge that course by assigning tasks outside the usual area. If they do not assign these tasks on the strength of the employer-employee relation on which compensability depends, then what is the source of authority by which the task is assigned? *The practical reason for the rule is that any other view places the employee* in an intolerable dilemma: if he complies with the order, he forfeits compensation protection; if he does not comply, he gets fired. Tested by these simple arguments, the cases denying compensation seem wrong.' ''

And then that Court cites the Kentucky case of *Nugent Sand Co. v. Hargesheimer,* 254 Ky. 358, 71 S.W.2d 647, and quotes therefrom as follows:

'' 'The statute (section 4880) defines the accidents under which injuries to an employee are made compensable as those ''arising out of and in the course of his employment.'' The act does not say ''when doing the work he was employed to perform.'' The language and the intent are of wider scope. Regardless of judicial inclination, the courts are admonished by the statute itself to construe it liberally in favor of the injured employee.' ''

And the Mississippi Court again cites and quotes from *Nygaard v. Throndson Bros.,* 173 Minn. 441, 217 N.W. 370, as follows:

'' 'In that case it was said also that an employer may enlarge or extend the scope of the employment; and that an employee who, at the direction of his employer,

performs services beyond the scope of his usual employment but in consequence of the relation of employer and employee and as incidental to the employment, is within the protection of the act while performing such services. That is this case precisely.' "

The Mississippi Court ended the case with this statement:

"Under the above authorities, we are of the opinion that under the undisputed facts in this case that Kemp, at the time he received his injuries, was fulfilling his contract of hire with the Skene Gin Company. Admittedly Kent was a candidate for political office and this was a personal matter as far as he was concerned, but as for Kemp, he was doing what he was ordered to do by the general manager of the Skene Gin Company, his employer, and he was paid his regular salary for so doing. Under these circumstances, we hold that his injuries arose out of and in the course of his employment within the meaning of the compensation law and were compensable."

In a Louisiana case, *Kern v. Southport Mill*, 174 La. 432, 141 So. 19, 20, that Court said this:

"* * * whenever the employer calls upon the employee to render any particular service, he, at least (that is to say, the employer himself), is in no position any longer to deny that the services thus requested arise out of and are incidental to the employment. Otherwise, by what right has the employee been called upon to perform them?

"Accordingly, the question whether or not the services being rendered by the employee, at the time, when he is injured, arise out of and are incidental to his

employment, cannot be raised when the employee has been given special instructions to perform the particular services in which he was engaged at the time he was injured, but only when the employee has undertaken such service on his own initiative as being actually or presumably within the scope of his duties.''

Of course there are cases which hold to the contrary of those cited above. Some of them deny compensation where the services are entirely unrelated to the business enterprise. All of these cases, as well as those supporting the view that the injury is compensable where directed by the employer, will be found annotated in 172 A.L.R., p. 378. 58 Am.Jur., p. 738, Sec. 231, is to the same effect. The author sets out what courts have held them compensable and what not.

In the early life of Workmen's Compensation the Courts realized, in order to carry out the intent of the Act, that in many instances similar to the instant case where the employer or the one in that position ordered the employee to do some work outside of and beyond what they were originally hired to do that it was necessary for the protection of the workman that they be covered in this work. As a result many courts, where the Act is similar to ours, have adopted the rule that ''the scope of employment may be temporarily enlarged by the direction or permission of the employer or one superior to the employee in authority.'' 71 C.J., Sec. 407, p. 667.

In addition to the cases above cited from the Kemp opinion, *Corpus Juris, supra* (published more than twenty years ago) cites cases from Arizona, California, Connecticut, Georgia, Idaho, Iowa, Minnesota, Nebraska, New York, Oklahoma, Oregon, Pennsylvania, Texas, Wisconsin and England.

█ Presumptively the carriers of W. C. knew this might be done—that the courts were so holding. For this reason they should not be heard to complain—they should have their rate based on this possibility.

The trial judge has written an excellent memorandum on this matter citing various cases on different points but the case primarily relied upon for denying compensation is that of *Elliott v. Elliott Bros.*, 1932, 165 Tenn. 23, 52 S.W.2d 144. In that case the petitioner was the father of two partners in a garage. This father worked for the repair shop or garage as a kind of a carpenter's helper but he was sent by one of the partners over to this partner's home to do private work in the home of one of these partners without any direction from the firm. The firm was not interested in this house where the petitioner was working. Under such circumstances the Court said that the injury did not arise out of his employment by the firm and thus denied compensation. In that case neither of the sons of the old man, those owning the repair shop, testified in his favor and the court commented on the fact that they were not particularly interested in showing all the facts about it and thus the compensation was denied. We think that case entirely different from the instant case.

In the Elliott case there was absolutely no showing that the work being done by the petitioner when he was injured was done for the partnership or at its direction. The Elliott case is one of a "loaned employee". *Kempkau v. Cathey,*—Tenn.——, 277 S.W.2d. 392. In the instant case the sole employer testifies, as well as the employee, that he directed this employee to do the work that she was doing at the time that she was injured. We think that clearly there is an entirely different case made out

and that the Elliott case is no authority or precedent for the position that this is not a compensable injury.

This Court, speaking through the present Chief Justice, has determined the question far more closely related to the facts of the instant case than is the Elliott case and held that the acts there were compensable. We refer to *Tallent v. M. C. Lyle & Son,* 187 Tenn. 482, 216 S.W.2d 7, wherein this Court held that the term "employment" should be given a liberal and broad construction; that one who was driving his automobile backwards and forwards, hauling others to work and while thus doing it he stopped to make an adjustment on his engine and was thus injured that this injury arose out of and in the course of his employment so as to be compensable. The Court there analyzed and discussed ably a number of our cases and quoted from *Chamber of Commerce v. Turner,* 158 Tenn. 323, 13 S.W.2d 318, 319, as follows [187 Tenn. 482, 216 S.W.2d 9]:

> "It is not essential that the employee be engaged in an act directly beneficial to his employer in order that the resulting injury may be said to have arisen out of the employment."

■ But as said above we have no case wherein the identical situation was presented as here presented where the sole employer directed the employee to do what he was doing at the time of injury. Under the circumstances here it seems to us that under the construction that the statute demands (50-918, T.C.A. Equitable construction to secure remedial purposes in the law) we would be unjustified in holding that this employee was not entitled to compensation. She was doing what her employer told her to do and was not doing it for any

particular purpose or pleasure on her own part, according to the undisputed testimony in this record.

As above said the appellant relies primarily on the case of *National Surety Corp. v. Kemp, supra,* and the cases and authorities therein cited. The appellee likewise relies primarily on the dissenting opinions in that case and the authorities there cited. The appellee likewise cites cases from the same jurisdiction as some of the cases cited by the appellant. On investigation we do not find them overruling the other cases—they have a different factual turn. The dissenting opinions in the Kemp case are primarily based on the argument that the surety company was not there liable. It is inferentially conceded that the employer Kent might be liable. One dissent ends thus [217 Miss. 537, 64 So.2d 733]:

"Mr. Kent may be liable. That is not the question. Is the insurer liable? That is the question. They are very different questions."

The other dissent quotes the statutes making the surety company liable and argues that under the facts and statutes it is not liable.

For these reasons we think the dissents are very much weakened when applied to the instant case.

The contract that the insurance carrier makes in a Workmen's Compensation case is a contract of indemnity. *United States Fidelity & Guaranty Co. v. Booth,* 164 Tenn. 41, 45 S.W.2d 1075. It certainly seems that the employer, and the sole employer who directed this employee to do what she did when she was injured, would be liable to her when the compensation act is otherwise in force as to him. (It is conceded here that

it is). Therefore the insurance carrier who is liable as an indemnitor would be liable.

For the reasons above expressed we are constrained to reverse the judgment below and remand the cause for entry of a decree in conformity with this opinion.

## On Petition to Rehear.

 There has been a petition to rehear filed in this case. This petition to all intents and purposes is nothing but a reargument of the matters heretofore argued orally and by brief. In the petition to rehear now filed there are some additional quotations from the record which we read prior to reaching the conclusion which we reached in the opinion originally handed down. The petitioner now seems to take the position, to some extent, that this opinion is the opinion of the writer and not the opinion of the Court. This obviously is a mistake of fact. The opinion handed down in this case, as in all cases where there is no dissent, is the opinion of the entire Court. That is certainly true in this case.

We are sorry that the petitioner cannot and does not agree with our reasoning. We think though that the reasoning is sound and logical and does not in any way upset any former opinion of this Court but in fact follows the reasoning and logic of former Workmen's Compensation opinions as applied to the facts of the different cases. We have never had a case in this State, as far as we know, where the factual situation is the same as here.

The petitioner again reargues and cites as an authority for his argument the dissenting opinions in cases and cites other cases that have been heretofore cited. We in the original opinion recognize that there was a division of opinion on this question but we concluded

that the conclusion which we reached was the sounder of the two and followed those decisions.

Petitioner now cites as authority for the petition to rehear the case of *Persons v. Stokes,* Dec. 1954, 222 Miss. 479, 76 So.2d 517, 519, as authority and on all fours with the position that the petitioner takes herein. We have very carefully read this case and so far as we can see the only similarity between it and the instant case, and the Kemp case which we cited in our majority opinion as stating the sounder rule, is that this is a Workmen's Compensation case. In this Persons case the Mississippi court did not cite or make any reference to the Kemp case which we cited in our original opinion wherein there were two published opinions. We cited them both. The Kemp opinion was written by the Supreme Court of Mississippi as was the Persons opinion. By looking at the reports it is seen that the same Justices were sitting in each of those cases and that the Kemp opinion was decided a year and a few months prior to the Persons case. The Persons opinion makes no reference whatsoever to the Kemp opinion obviously because the questions involved in the two opinions are in no wise related.

In the Persons opinion the Court had before it a situation where the servant had stepped aside from the master's business for some purpose disconnected with his employment. The Court there says among other things:

"The employer did not require, foster, or encourage the hunting of squirrels by his employees while on the job and there is no proof that the employer permitted promiscuous hunting in the pasture to which he sent the appellee on the occasion in question."

By reference to the factual situation as fully set forth in the original opinion it will be seen how different this

is. Another thing in the Persons case, the employee who sought compensation was working on the wage scale of $12 per day at the time the injury occurred while his compensation was written for him when he worked on a wage scale of $1.75 per hour operating a bulldozer. The Court in the Persons case further said:

"He did not receive his injury at a time when he was fulfilling any of the duties of his employment, or at a time when he was engaged in doing something incidental thereto, or at a time when he was engaged in the furtherance of the employer's business. His injury did not result from a risk to which his employment exposed him."

As we see it this case has nothing in the world to do with the factual situation as involved in the case now before us.

The petitioner also cites the case of *Dobson v. Standard Accident Ins. Co.,* La. App., 78 So.2d 258, as authority for his position and as distinguishing the Kern case which we cited in the original opinion. The Dobson case is not in point and has nothing whatsoever to do with the instant case. In the Dobson case the Court said that Dobson was working for his father whose business was covered by a

"policy classification of operations is specified as gasoline or oil dealers, including drivers, chauffeurs and their helpers. The premiums were based on the total annual remuneration of the employees. The business of the employer was shown to be that exclusively of a wholesale distributor of oil and gasoline and of building materials and supplies."

At the time of the injury the employee was building a fense around some property of his father which had

nothing to do with the performance of the work which the policy covered. This suit was against the insurance company and based upon the Compensation Act of Louisiana, LSA-R.S. 23:1021 et seq., which according to the Louisiana Court "does not extend coverage to injured employees unless their employment is a regular part of the employer's trade, business or occupation, or unless the employment has reference to or connection with or is incidental to or in promotion of the employer's trade, business or occupation."

That Court in a petition on a motion to rehear says:

"In the Kern case, compensation was sought from the employer, while here the claim is against the insurer."

As pointed out that court itself recognized the difference between the Kern case and the case now cited as authority.

The most apt and only logical, courteous reply to this petition to rehear is as was said by Mr. Justice Story in *Jenkins v. Eldredge,* Fed. Cas. No. 7,267, 3 Story 299, that:

" 'During a pretty long period of judicial life, * * * it has been my misfortune on many occasions to have differed widely from counsel on one side or the other, in important causes, as to the merits thereof. But this, although a matter of regret, could not, as it ought not, in any, the slightest degree, influence the duties or judgment of the court.' " *Louisville & N. R. Co. v. U.S. Fidelity & Guaranty Co.,* 125 Tenn. 658, 691, 148 S.W. 671, 680.

It thus becomes our duty to overrule the petition to rehear because we think that the original opinion is absolutely correct and the logical conclusion to reach.