C. H. SHARP, d/b/a C. H. SHARP LUMBER COMPANY, and EMPLOYER'S INSURANCE COMPANY OF ALABAMA Respondents,

*v.*

CLARENCE JENKINS, Petitioner.

367 S. W. 2d 464.

(*Jackson*, April Term, 1963.)

Opinion filed May 10, 1963.

HARRELL & NOWELL, Trenton, for petitioner.

SPRAGINS, MENZIES & SPRAGINS, Jackson, for respondents.

Mr. Justice White delivered the opinion of the Court.

This suit was instituted for the purpose of recovering certain benefits allegedly due the petitioner under the Workmen's Compensation Law. There was an award for the petitioner. The extent of the award and the amount thereof is not now in dispute. From the judgment of the Trial Court the employer and his insurance carrier have appealed and contend here "there is no evidence to support the findings and judgment of the Court" and (2) "the Court erred in not concluding that at the time said injury was sustained, petitioner was employed and being used as a domestic servant and in domestic employment, rendering the Workmen's Compensation Law inapplicable by operation of the provisions of Subsection (c) of Section 50-906 T.C.A."

The facts as stated in the brief filed on behalf of appellants, defendants below, are in substance as follows:

It is averred in the petition that Clarence Jenkins had been employed for about twenty-five (25) years by C. H.

Sharp doing business as C. H. Sharp Lumber Company and that on July 29, 1960 and for some years prior thereto the petitioner and the defendant, C. H. Sharp, doing business as aforesaid occupied the relationship of employee and employer within the meaning of the terms and conditions of said Workmen's Compensation Act and were bound by the Act. It was further averred that the defendant, Insurance Company, Employer's Insurance Company of Alabama, had issued its policy insuring the liability of said employer under the Act.

. It was further averred that on or about July 29, 1960 the said Clarence Jenkins was injured in an industrial accident which grew out of and in the scope and course of his employment. It was averred at the time of the accident he was "in the process of cutting the grass with a mower when he got the fingers of his left hand cut off".

. The joint answer of the defendants admitted that on July 29, 1960 C. H. Sharp Lumber Company was a proprietorship owned and operated by C. H. Sharp, that the defendant Employer's Insurance Company of Alabama was, on said date, the insurer of the said C. H. Sharp, d/b/a C. H. Sharp Lumber Company, against liability under the Workmen's Compensation Law of Tennessee, that petitioner was, on said date, employed by said C. H. Sharp and C. H. Sharp Lumber Company and and been so employed for a number of years, and that petitioner sustained an injury to the fingers of his left hand when he was engaged in cutting grass with a power mower.

However, the answer stated further that C. H. Sharp was engaged in the business, through C. H. Sharp Lumber Company, of operating a retail lumber and building material yard and in the general contracting business in

Rutherford, Tennessee, in July 1960, and that, although petitioner was at times employed in and about such retail lumber yard and the business of such proprietorship, he was, at the time of said accident, employed and being used in mowing the lawn at the personal residence of the defendant C. H. Sharp.

Several grounds were advanced in the answer in support of the proposition that such accident was not covered by the Workmen's Compensation Law of Tennessee, but the ground set forth which is pertinent on this appeal is that, at the time said injury was sustained, petitioner was employed and being used as a domestic servant and in domestic employment, rendering the Workmen's Compensation Law inapplicable by operation of the provisions of Subsection (c) of Section 50-906 of Tennessee Code Annotated.

The case was heard by the Trial Court on December 15, 1961 and, pursuant to request therefor on behalf of the defendants, the Court filed a written statement of his Findings of Fact and Conclusion of Law on April 2, 1962, from which we quote portions pertinent to our disposition of this case.

"The Defendant Company is individually owned by C. H. Sharp and operated under the name of C. H. Sharp Lumber Company, engaging in the retail sale of lumber and building material. The Defendent was and is insured under the Workmen's Compensation Act by the co-defendant, Employer's Insurance Company of Alabama.

"The petitioner was employed as a general laborer at the lumber yard. He drove the Company's truck to

make deliveries, and handled lumber and building material as directed by his employer. In the summer, he operated a company owned power mower to cut the grass on grounds adjacent to the lumber shed.

"The petitioner worked at the residence of his employer one day or less each week, depending upon the seasonal demands for his labor. Mr. Sharp's residence was located several doors up the street from his place of business. At his direction, Petitioner mowed the spacious lawn at the Sharp residence during the summer, usually on Fridays of each week, during working hours. This required a full day. From time to time, he performed other work at the Sharp home such as working flower beds, raking leaves, washing windows and moving furniture and carpets. All this work was done at the specific direction of Mr. Sharp.

\*    \*    \*    \*    \*    \*

"On Friday, July 29, 1960, while mowing the Sharp lawn, Petitioner was injured when the blade of the Company owned mower struck his left hand. The injury resulted in amputation of the first joints of the first and second fingers and below the first phalange of the third finger.

"His medical expenses were paid by Mr. Sharp.

\*    \*    \*    \*    \*    \*

"The chief defense relied upon is that Petitioner was employed in a dual capacity; that is, as a general laborer at the lumber business, and regularly as a domestic servant at his employer's residence. Defendant insists that Petitioner was injured in the latter capacity, which is exempted by the Workmen's Compen-

sation Law of Tennessee, Section 50-906(C) T.C.A., and is therefore not entitled to compensation, having sustained an injury outside his employment."

The Court stated further that the view taken by the defendants is supported by abundant authority and cited in particular the case of *Burnett v. Palmer-Lipe Paint Co.*, 216 N.C. 204, 4 S.E.2d 507, and cases from other jurisdictions cited therein.

The question presented, however, is one upon which there seems to be an equal division of authority.

"Other jurisdictions hold that where the employee is engaged on a personal mission or business, on orders of the employer, is paid his regular salary for so doing and is injured in the process, the injury is compensable. *National Surety Corp. v. Kemp*, 217 Miss. 537, 64 So. (2d) 723 [65 So.2d 840]. Recognizing these different views, Tennessee is committed to the latter, or Mississippi view. *McAdams v. Canale*, 200 Tenn. 655, 294 S.W.2d 696.

"The court finds that the facts herein cannot be distinguished, in principle, from those of the McAdams case, and therefore concludes that the injury arose out of the employment of Petitioner and is compensable."

The general duties of the petitioner as related by him and also by his employer included the loading and unloading of lumber at the lumber yard, the doing of some carpentry work, the driving of a truck from time to time in delivering lumber and he mowed the grass in the area between the building of the Lumber Company and the Street. Jenkins was a general utility man in the employ of Mr. Sharp.

Mr. Sharp lived in a house on the opposite side of the street from the lumber yard in the second house from the school yard, which school yard was directly across the street from the Lumber Company. Petitioner had been used to do work at the Sharp residence, where he performed the function of a yard man or handyman. He worked the garden, trimmed around or in flower beds; brought in coal at night; washed Mrs. Sharp's car; raked leaves and washed windows on the outside on occasions. He went to the Sharp residence only when Mr. Sharp directed him to do so but he worked there on an average of at least one day each week during the growing season, usually on Fridays.

On Friday, July 29, 1960, the day of the injury, petitioner was sent by Mr. Sharp to his residence to work at about 9:00 A.M. and shortly thereafter he injured his hand on the power mower blades resulting in this suit. These are the facts upon which the Court made an award to the petitioner.

Jenkins has filed a motion to dismiss this appeal because the appeal bond was not executed in due time. We find the motion to be without merit and it is overruled.

When the petitioner was asked to describe his job with C. H. Sharp Lumber Company he said "Well, my job was, work down there at the shed, (meaning at the Lumber Company) and I had to do most anything that come". Q. "Were you the handyman down there?" A. "Yes, sir."

In describing what occurred on the day of the accident the petitioner said: "Well I come down to the shed, worked awhile down there, first, and so Mr. Sharp, he

told me to go to the house and work and I went to the house to work in the yard.''

Upon being questioned further the petitioner repeated that on the morning of the accident he went to his regular employment at the lumber yard and did some work there, and then Mr. Sharp sent him to the house, meaning the Sharp home, to use a power mower to mow the lawn. This is the same mower that was used to mow the lawn at the Lumber Company.

The petitioner said that he worked under the direction of Mr. Sharp and that he was told by Mr. Sharp what to do most all the time. He said that he cut the grass at the lumber yard and also at the Sharp home ''whenever he told me to go up there and cut it''. He had been doing this for a number of years but received no additional pay for this work. He received all of his wages from Sharp Lumber Company and was paid by one check for each week of work.

The petitioner said that he was a regular employee of C. H. Sharp Lumber Company. ''I had no other job''. He was originally employed to work at the lumber yard and worked there for possibly fifteen (15) years before he started working at the home of Mr. Sharp and he worked for Mr. Sharp only on occasions when directed to do so. He said that he did not work at the house during the winter time. However, at another point in his testimony he said that he worked the year round. He did not work inside the house. On occasions he washed and waxed the automobiles of Mr. Sharp and Mrs. Sharp, but it seems from the proof that this was usually done at the shed in the lumber yard.

The testimony of Mr. Sharp is in substantial agreement with that of the petitioner. He said that he always told the petitioner when to cut the grass at the lumber yard and also when to cut it at his home. All work at the home was done during regular work hours. On the occasion in question the petitioner had been told by Mr. Sharp to cut the grass at his home.

It is obvious to us that the petitioner was originally employed to work at the lumber yard as a handyman or general utility man and in doing this he performed the duties aforesaid. After some years of such employment he was directed by Mr. Sharp to work around his home by cutting the grass, etc.

The primary defense to this suit is that the petitioner was working as a domestic servant at the time of his injury and since the Workmen's Compensation Law does not apply to domestic servants and employers thereof there can be no liability under the Act to the petitioner for the injury sustained by him.

It has occurred to us that the petitioner might not be considered a domestic servant while working in the capacity above described. Black's Law Dictionary, Fourth Edition, defines domestic as:

"A domestic, or, in full, domestic servant, is a servant who resides in the same house with the master. The term does not extend to workmen or laborers employed out of doors."

The cited authority for this definition is *Ex parte Meason,* 5 Bin. (Pa.P) 167; *Richardson v. State,* 43 Tex. 456; *Anderson v. Ueland,* 197 Minn. 518, 267 N.W. 517, 518.

Under Words and Phrases, Volume 13, "Domestic Servants; Domestics", at page 255, there may be found a definition of the term by decisions of the various State Courts. By way of interest we note that the LSA-Civil Code enumerates as domestic those who receive wages and stay in the house of the person paying and employing them, for his own service or that of his family; such as valets, footmen, cooks, butlers, and others who reside in the house.

However, in the view that we take of this matter it is not necessary to determine the meaning of the phrase "domestic servant".

We have examined all of the authorities relied upon by the petitioner and the defendants, and we conclude as follows:

(1). Jenkins was originally employed as a utility or handyman by C. H. Sharp. His duties there were not definitely defined but he was to carry out the orders of Mr. Sharp as directed by him from time to time.

(2). After the lapse of some years, Mr. Sharp sent the petitioner to his home on an average of about one day per week to do work in the yard and around the house. He received his entire compensation through the Company. There was no separation of the number of hours worked at the home from those worked at the lumber yard. There was no separate wages paid to the petitioner for the work at the house. He simply worked as directed by his employer during the hours of each day and the days of each week.

(3). The record shows that the Lumber Company was the sole employer of the petitioner. His services were

engaged by and sold to the Lumber Company. He did any type of work at the lumber yard and at the home of Mr. Sharp or any other place as directed by his employer. In other words, he had only one employment and that was to work for Mr. Sharp. Where he worked and what he did was of little consequence to him, apparently.

If he had refused to cut the grass and do other things around the house as directed by Mr. Sharp he, no doubt, would have lost his job. We think it would be grossly unfair to deny this man compensation merely because in the discharge of his obligation and duty to his employer he did not happen to be at the time of his injury mowing the lawn or doing other work at the Lumber Company instead of mowing the lawn at the home of Mr. Sharp. His work at the time of the injury was incidental to his regular employment at the lumber yard.

The application of the Workmen's Compensation Law to given facts has troubled the Courts of this country for the past fifty (50) years, and we are not unmindful that Courts of other States have reached different conclusions in construing their Acts than those reached by us in construing the Compensation Act of this State. Of course, each law is different and its application would of necessity be different. We are satisfied that the case of *McAdams v. Canale,* 200 Tenn. 655, 294 S.W.2d 696, controls the principles involved in the case here.

T.C.A. sec. 50-918 states that the Workmen's Compensation Law is declared to be a remedial statute and the same shall be given an equitable construction by the Courts to the end that the objects and purposes of this law may be realized and attained. There have been many cases holding that "this statute is to be construed liber-

ally as to persons entitled to its benefits". *Jo nson Coffee Co. v. McDonald,* 143 Tenn. 505, 226 S.W. 215; *Millican v. Homes Stores,* 197 Tenn. 93, 270 S.W.2d 372; *Ransom v. H. G. Hill Co.* 205 Tenn. 377, 326 S.W.2d 65 ), and many other cases.

In the case of *Great American Indemnity Co. v. Friddell,* 198 Tenn. 360, 280 S.W.2d 908 is support for the proposition that all reasonable doubt as to whether an injury arose out of employment must be construed in favor of the employee. The same rule of liberal construction applies to the determination of whether or not an injury occurred in the course of the employment.

The case of *McAdams v. Canale,* supra, was one in which Miss McAdams worked for one employer. Her duties were many and varied and involved driving an automobile in her employer's business and also for his personal pleasure. While driving on a mission personal to the employer she received serious injuries. This Court permitted a recovery. The facts were, substantially, that her employer was engaged in the business of operating coin operated record players and vending machines. The employee's duties included bookkeeping, typing, secretarial work, buying records, attending to the banking, and driving her employer's automobile, both for business purposes and purposes not connected with his business. During her employment she had frequently driven on missions for her employer which were purely personal to him and not connected with his business. At the time of her injury she was driving her employer's automobile under his immediate direction and control on such a mission merely because she was directed to do so. She had no interest whatsoever in the trip.

The Court in that case reaffirmed the holding in many prior cases that the injury received must arise "out of" the employment as well as "in the course of" the employment.

"Where the employee acts for the employer's benefit the acts are usually held to arise out of the employment, if expressly, impliedly or reasonably authorized. *Tallent v. M. C. Lyle & Son*, 187 Tenn. 482, 216 S.W.2d 7." *McAdams v. Canale*, supra.

In the McAdams case the Court said:

"Where, as here, the employee is doing what he or she is directed to do by the employer * * * it seems reasonable that an injury which arose during the course of this employment that the employee was directed to do should be compensable."

The case of *National Surety Corp. v. Kemp*, 217 Miss. 537, 64 So.2d 723, was cited with approval in the McAdams case. In the Kemp case the Court quoted with approval from Larson on Workmen's Compensation, Volume 1, Section 27.40, page 421 as follows:

" 'When any person in authority directs an employee to run some private errand or do some work outside his normal duties for the private benefit of the employer or superior, an injury in the course of that work is compensable. * * * The technical reason for these holdings is simply that, whatever the normal course of employment may be, the employer or his supervisory staff have it within their power to enlarge that course by assigning tasks outside the usual area. If they do not assign these tasks on the strength of the employer-employee relation on which compensability

depends, then what is the source of authority by which the task is assigned? The practical reason for the rule is that any other view places the employee in an intolerable dilemma: if he complies with the order, he forfeits compensation protection; if he does not comply, he gets fired. Tested by these simple arguments, the cases denying compensation seem wrong.' "

The McAdams case also cited with approval the statement made by the Court in *Nygaard v. Throndson Bros.*, 173 Minn. 441, 217 N.W. 370 as follows:

" 'In that case it was said also that an employer may enlarge or extend the scope of the employment; and that an employee who, at the direction of his employer, performs services beyond the scope of his usual employment but in consequence of the relation of employer and employee and as incidental to the employment, is within the protection of the act while performing such services.' "

For a period of many years prior to July 29, 1960, the employer had carried Workmen's Compensation Insurance and the employee, the petitioner, had been equally bound by the terms and provisions of said Act. He had sold his services to his employer and was willing to do that which his employer directed him to do. He had no right to deny his services in view of the fact that he had agreed to work for his employer and when he was instructed to mow the lawn on the day in question he had the right to assume that he would be doing this as a part of his general employment and, therefore, he would be subject to the usual terms and conditions of such employment. To have refused to cut the grass could have resulted in his discharge. It would be most unreasonable

to require any employee and more especially a laborer to inquire of his employer whether or not he would have the benefits of the Act while performing some duty or work assigned him.

The law in all of its grandeur and dignity is applied for the protection and the enforcement of the rights and privileges of all people alike. It matters not that they be learned or unlearned.

Two Courts have had to pass upon the applicability of the Act in this case. Surely the law does not require a better understanding of the Act in question by employee and laborers than that possessed by the Courts. We are confident that it never occurred to the employer in this case or to the employee that the Act afforded coverage or failed to afford coverage while the employee was doing some work at the home of Mr. Sharp. It probably did not occur to either of them as it would not to the average person under the same circumstances.

We are required under the law to take the most favorable view of the evidence in support of the claim presented by the employee. *Anderson v. Volz Construction Company,* 183 Tenn. 169, 173, 191 S.W.2d 436; *Griffith v. Goforth,* 184 Tenn. 56, 62, 195 S.W.2d 33.

These and many other cases support the statement that the findings of fact by the Trial Court are binding upon us in our review of the case provided there is any material evidence to support such finding. In other words, it is our duty to review the decision of the Trial Court for the purpose, only, of determining whether or not there is material evidence to support the finding of fact by the Trial Court upon which he based his judgment. We, of

course, are not bound by his conclusion of law applicable to such finding.

After a very careful review of this entire record and the cases supporting the position of the appellant and those supporting the position of the petitioner, we are convinced of the correctness of the holding of the Trial Court and, therefore, his action is affirmed and this case is remanded for further proceedings not inconsistent with this opinion.

DYER, JUSTICE, did not participate in this case.