Paul McKINNEY, Plaintiff-Appellant,

v.

TRUCK INSURANCE EXCHANGE, Defendant-Respondent.

No. 7762.

Springfield Court of Appeals.
Missouri.
May 25, 1959.

Allen, Woolsey & Fisher, Springfield, for plaintiff-appellant.

Mann, Walter, Powell, Burkart & Weathers, Springfield, for defendant-respondent.

STONE, Presiding Judge.

Cut to the quick by the indignity inflicted upon him, a bull calf being cas-

trated by one Davis, "sort of an expert" at such matters, rebelled and grievously injured his tormentor, by reason of which Davis filed a claim for benefits under the Missouri Workmen's Compensation Law against Paul McKinney, as employer, and Truck Insurance Exchange (hereinafter referred to as the Exchange), his alleged insurer. The Exchange theretofore had issued a "standard workmen's compensation and employers' liability policy" to "Ralph McKinney & Paul McKinney dba Acme Glass Co., 1647 St. Louis, Springfield, Missouri," as "employer," described in the policy declarations as a "co-partnership"; but, claimant Davis having been employed by Paul in connection with operation of a 167–acre farm in another county owned by Paul and his wife and Davis' castration of the calf having been wholly unrelated to the business conducted by Acme Glass Company (even though the castrated calf had wreaked as much havoc as the proverbial bull in a china closet), the Exchange insisted that its policy issued to Acme afforded no coverage to Paul with respect to his farm operation and refused to defend him in the compensation proceeding instituted by Davis, although Davis' joinder of the Exchange as a party to the proceeding necessitated a defense on its own behalf. After counsel employed by Paul personally and counsel for the Exchange, presenting a united front against their common antagonist, had concluded upon appeal to this court a successful defense of Davis' claim [see Davis v. McKinney, Mo.App., 303 S.W.2d 189] and thus had put out of the way (if not out of mind) the castrated calf and the contentious claimant, Paul turned on the Exchange and brought the instant suit to recoup the expenses (primarily attorneys' fees) incurred by him personally in such defense. Cast in the trial court on the Exchange's motion to dismiss his petition, Paul appeals from the adverse judgment.

■ Paul's earnest contention that the Exchange owed him a defense in the compensation proceeding rests on his theory that, by issuing a workmen's compensation policy to "Ralph McKinney & Paul McKinney dba Acme Glass Co." described as a "co-partnership," the Exchange became obligated to "step in and afford a full defense to these two named individuals on any workmen's compensation claim which may be filed against either of them and (the Exchange's) obligations to the two named individuals are the same as though two separate policies were issued, one to each of the individuals," because (as Paul's counsel put it) "a partnership cannot be considered as a separate entity and the effect of this policy was to fully insure all workmen's compensation obligations of the two named individuals." Although other jurisdictions reflect a sharp conflict of authority as to whether or not a partnership is a legal or juristic entity separate and distinct from the individuals who compose it [68 C.J.S. Partnership § 67 a, p. 496; 40 Am.Jur., Partnership, § 18, p. 137; 7 U.L.A., § 6, footnotes 8 and 9], the courts of this state usually have regarded a partnership as a mere ideal entity with no legal existence apart from its members, and have followed the so-called aggregate or common-law theory of partnership rather than the entity theory. See Davison v. Farr, Mo.App., 273 S.W.2d 500, where we collected and cited the Missouri cases. There may be a judicial tendency toward the entity theory [40 Am. Jur., Partnership, § 18, p. 137]; and, as counsel for the Exchange assert, the Uniform Partnership Act adopted in Missouri in 1949 [Sections 358.010 to 358.430, incl., RSMo 1949, V.A.M.S.] may have "wrought decided changes in the common-law conception" of a partnership. Gleason v. Sing, 210 Minn. 253, 297 N.W. 720, 722; Toenberg v. Harvey, 235 Minn. 61, 49 N.W.2d 578, 581. However, the persuasive opinion of informed scholars is that the Uniform Partnership Act does not transform a partnership into a separate legal or juristic entity [Helvering v. Smith, 2 Cir. (per Learned Hand, J.), 90 F.2d 590, 591 (1); Stilgenbaur v. United States, 9 Cir., 115 F.2d 283, 286(3); 68 C.J.S. Partner-

ship § 67 a, loc. cit. 498] but "adopts the common law approach with 'modifications' relating to partnership property" so that the Act "is consistent with the entity approach for the purposes of facilitating transfers of property, marshalling assets, and protecting the business operation against the immediate impact of personal involvements of the partners." Mazzuchelli v. Silberberg, 1959, 29 N.J. 15, 148 A.2d 8, 11. Accordingly, we cannot agree with counsel for the Exchange that the Uniform Partnership Act "makes a partnership a legal entity."

But, grave danger lurks in unquestioning acceptance and unguarded application of potentially deceptive generalities; and, although our Missouri courts usually follow the aggregate or common-law theory as to partnerships, we think that it should not and cannot be announced, as an arbitrary, absolute, unqualified and unyielding rule, that under no circumstances and for no purposes may a partnership be considered and treated as an entity. We read that the partnership entity sometimes is recognized with reference to its contracts with third persons [68 C.J.S. Partnerships § 67 a, loc. cit. 498; Ibid., § 68, p. 499]; and we like and adopt the logical, forthright, common-sense reasoning of the Supreme Court of Tennessee in United States Fidelity & Guaranty Co. v. Booth, 164 Tenn. 41, 45 S.W.2d 1075, 1076–1077(2), a case involving a workmen's compensation policy, where it was said that, "in construing and giving effect to contracts made by and with partnerships, it may appear from the subject-matter or otherwise that the parties dealt with and treated the partnership as if it were an entity, separate and distinct from the individuals composing it; and, to the extent that this is so, the intention of the parties can only be given effect, in the enforcement of the contract, by judicial recognition of the partnership entity as contemplated by the parties."

Thus, in jurisdictions where, as in Missouri, the aggregate or common-law theory as to partnerships usually is followed, the courts have given effect to the intention of contracting parties by treating a partnership as an entity in determining and delimiting the coverage afforded by insurance policies issued to the partnership. For example, in New Jersey where, as in this state, a partnership is not regarded as a separate employing entity under the Workmen's Compensation Law and a partnership employee is an employee of each individual partner [Mazzuchelli v. Silberberg, supra, 148 A.2d loc. cit. 11] and therefore (where subject to workmen's compensation coverage) cannot maintain a common-law action for damages against an individual partner as "a third party" [Parker v. Zanghi, 45 N.J.Super. 167, 131 A.2d 802, 806], nevertheless a partnership is recognized as an entity in determining and delimiting the coverage afforded by a workmen's compensation policy issued to the partnership [Serafino v. United States Fidelity & Guaranty Co., 122 N.J.L. 294, 4 A.2d 850] and also is treated as an entity to reach an insurer's contractual obligation to a partnership. Scaglione v. St. Paul-Mercury Indemnity Co., 28 N.J. 88, 145 A.2d 297, 304. And, in New York where likewise a partnership is not a separate employing entity under the Workmen's Compensation Law and a partnership employee subject to workmen's compensation coverage cannot maintain a common-law action for damages against an individual partner [Williams v. Hartshorn, 296 N.Y. 49, 69 N.E.2d 557; Klein v. Pepe, Sup., 99 N.Y.S.2d 794], a partnership nevertheless is treated as an entity in determining and delimiting the coverage afforded either by a workmen's compensation policy issued to a partnership [Ardolino v. Ierna, 225 App.Div. 439, 233 N.Y.S. 477; Amish v. Amish, 209 App. Div. 337, 204 N.Y.S. 439] or by an automobile liability policy issued to a partnership. Hartigan v. Casualty Co. of America, 227 N.Y. 175, 124 N.E. 789; Geitner v. United States Fidelity & Guaranty Co., 251 N.Y. 205, 167 N.E. 222; Jacobs v. Maryland Casualty Co., 198 App.Div. 470,

191 N.Y.S. 692, affirmed 234 N.Y. 622, 138 N.E. 472. For that matter, we find that, in determining the coverage afforded by a liability insurance policy issued to a partnership, the Kansas City Court of Appeals in Kelley v. London Guarantee & Accident Co., 97 Mo.App. 623, 71 S.W. 711, treated the partnership as an entity and held that "in order to render liable an indemnitor like this defendant, it must be made to appear that the negligent act of the individual member was such an act as made it the act of the partnership."

■ Insurance contracts should be construed by the same general rules applicable to other written contracts. Central Surety & Ins. Corp. v. New Amsterdam Casualty Co., 359 Mo. 430, 222 S.W.2d 76, 80(4); Henderson v. Massachusetts Bonding & Ins. Co., 337 Mo. 1, 84 S.W.2d 922, 924(1). Where there is no ambiguity, there is no room for construction, and the unequivocal language of the contract must be given its plain meaning unless contrary to public policy or positive law. State ex rel. Prudential Ins. Co. of America v. Shain, 344 Mo. 623, 127 S.W.2d 675, 676(2); Perkins v. Perkins, Mo.App., 284 S.W.2d 603, 606(3,4); Graham v. Gardner, Mo.App., 233 S.W.2d 797, 800(1). Of course, if the contract is reasonably open to different constructions, the one most favorable to the insured must be adopted; but that principle does not authorize a perversion of language or the exercise of inventive power to create an ambiguity when none exists. Central Surety & Ins. Corp. v. New Amsterdam Casualty Co., supra, 222 S.W.2d loc. cit. 78(1); Wendorff v. Missouri State Life Ins. Co., 318 Mo. 363, 1 S.W.2d 99, 101–102(5), 57 A.L.R. 615; Lynch v. National Life & Accident Ins. Co., Mo.App., 278 S.W.2d 32, 34 (4). And, as the lodestar of construction of other contracts is the intention of the parties [Tamko Asphalt Products, Inc. v. Fenix, Mo.App., 321 S.W.2d 527, 533(6); Cook v. Tide Water Associated Oil Co., Mo.App., 281 S.W.2d 415, 420(9)], so a court discharges its full duty with respect to construction of an insurance contract when it ascertains and gives effect to the intention of the parties thereto. State Mut. Life Assur. Co. of Worcester v. Dischinger, Mo., 263 S.W.2d 394, 402; Prange v. International Life Ins. Co. of St. Louis, 329 Mo. 651, 46 S.W.2d 523, 526(5), 80 A.L.R. 950; Perkins v. Perkins, supra, 284 S.W.2d loc. cit. 606(1).

■ The employer, to whom the Exchange issued the policy contract under consideration, was "Ralph McKinney & Paul McKinney dba Acme Glass Co., 1647 St. Louis, Springfield, Missouri," identified and described as a "co-partnership"; the employer's "operations" were classified and described as "glass merchants—including bending, grinding, beveling or silvering of plate glass" and "glaziers—away from shop—including drivers, chauffeurs and their helpers"; and, the policy "declarations" contained the statement that "this employer is conducting no other business operations at this or any other location not herein disclosed." Since the unambiguous provisions of the policy contract establish beyond room for reasonable doubt that the parties thereto intended and undertook to provide workmen's compensation coverage for Acme Glass Company, and since nothing in the policy suggests that thereby such coverage would be provided for any employee of either individual partner engaged in work wholly unrelated to the partnership operation, we believe that we should recognize the partnership entity of Acme Glass Company as the employer with whom the Exchange contracted, thereby giving effect to the plain intent of the contracting parties and following the general rule that an insurer may afford workmen's compensation coverage for a partnership and its business activities without exposing itself to liability for all of the unrelated business operations of each individual partner. 100 C.J.S. Workmen's Compensation § 372 c, loc. cit. 92; Ibid., § 372 d, loc. cit. 95; Ibid., § 372 a, loc. cit. 89; 58 Am. Jur., Workmen's Compensation, § 565, p.

927; Employer's Liability Assur. Corp. v. Smith, 86 Ga.App. 230, 71 S.E.2d 289, 293 (7); Serafino v. United States Fidelity & Guaranty Co., supra, 4 A.2d loc. cit. 852–853; Reed v. Mapstone Bros., 205 App.Div. 767, 200 N.Y.S. 304; Amish v. Amish, supra; Ardolino v. Ierna, supra. Consult also National Automobile Ins. Co. v. Industrial Accident Comm., 11 Cal.2d 694, 81 P.2d 928; United Pacific Ins. Co. v. Ohio Casualty Ins. Co., 9 Cir., 172 F.2d 836, 843.

Neither Brollier v. Van Alstine, 236 Mo.App. 1233, 163 S.W.2d 109, nor Allen v. Raftery, 237 Mo.App. 542, 174 S.W.2d 345 (upon which counsel for Paul rely), determines or even reaches the problem presented in the case at bar. The hard legal core of the Brollier case, supra, is that a partnership is not a separate employing entity under the Missouri Workmen's Compensation Law and that an employee of a partnership is also an employee of each individual partner. In the instant case, castrater Davis was not an employee of Acme Glass Company, the employer to whom the Exchange's policy was issued, but admittedly was an employee of Paul individually. It is one thing to say that an employee of a partnership is also an employee of each individual partner, but it would be quite another and different thing to say that an employee of an individual partner (in work wholly unrelated to the partnership operation) is also an employee of each of the other partners and of the partnership. Consult Elliott v. Elliott Bros., 165 Tenn. 23, 52 S.W.2d 144; Reed v. Mapstone Bros., supra, 200 N.Y.S. loc. cit. 306. The Allen case, supra, involved no question of partnership entity or partnership coverage.

The Exchange had no duty to defend Davis' claim under its policy obligation to defend even groundless, false or fraudulent claims against Acme Glass Company, the employer whose liability the Exchange undertook to insure, for Davis made no claim against Acme but, from the outset,

presented his claim as an employee of Paul individually and against Paul individually. American Mutual Liability Ins. Co. of Boston v. Chodosh, 123 N.J.L. 81, 8 A.2d 64, 66(4, 5), affirmed 124 N.J.L. 561, 12 A.2d 890; Weir v. New Amsterdam Casualty Co., 19 N.J.Misc. 342, 20 A.2d 12, 17(6), affirmed 129 N.J.L. 102, 28 A.2d 126; Gise v. Fidelity & Casualty Co. of New York, 188 Cal. 429, 206 P. 624, 22 A.L.R. 1476.

The judgment for defendant is affirmed.

McDOWELL and RUARK, JJ., concur.