**Bertrand O. MARSHALL, Appellant,**

v.

**CONNECTICUT GENERAL LIFE IN-SURANCE COMPANY, a Corporation, Respondent.**

No. 23816.

Kansas City Court of Appeals.

Missouri.

Oct. 7, 1963.

Stanford A. Zeldin, Quinn, Peebles & Hickman, Kansas City, for appellant.

Henry G. Eager, James J. Mollenkamp, Kansas City, Swanson, Midgley, Jones, Blackmar & Eager, Kansas City, of counsel, for respondent.

MAUGHMER, Commissioner.

This is a declaratory judgment action involving the benefits payable under a group insurance policy.

Bertrand O. Marshall, plaintiff and appellant, was employed by defendant Trans World Airlines, Inc., on November 21, 1951, as a mechanic. He continued in this employment *regularly* until November 17, 1956, when he was struck on the head by a large overhead door while standing in a Western Auto Supply Company store in Kansas City, Missouri. Because of the injuries received in that accident plaintiff was unable to or at least did not work regularly thereafter. However, he did work intermittently for TWA from the date of the accident until September 12, 1958, as of which date it was determined he was totally disabled by reason of such injuries, within the meaning of the group insurance policy covering TWA employees as issued by the defendant Connecticut General Life Insurance Company. He did no work thereafter and was no longer carried on the company's payroll, but drew weekly sick benefits until September 12, 1960, as of which date it was determined his disability was both total and permanent. Mr. Marshall was then 56 years of age.

The group insurance policy issued by the defendant company to TWA, insured certain employees, including plaintiff. The coverage included death benefits, accident, sickness and hospitalization, with none of which we are here concerned. It also contained life insurance provisions, maturing and payable upon either death, or permanent and total disability before age 60, as defined in the policy.

It is conceded that plaintiff became and was totally and permanently disabled on September 12, 1960. On September 20, 1960, he executed and filed a written claim on the company's form for total and permanent disability benefits in the principal sum of $15,000 and requested that payment be made monthly at the rate of $525, to continue for two and one-half years. The company honored the claim and paid the $15,000 in the manner requested, that is, monthly payments of $525 for 30 months. Plaintiff also received $60 per week sick benefits for two years prior to the date it was determined he was totally and permanently disabled.

It is the company's position that such payments discharged its obligation fully under the insurance contract. Plaintiff contends that additional benefits in the principal sum of $7,500 are due him. That is the only dispute involved in this lawsuit. Its decision will determine the controversy.

■ The policy on page 4 provides for ten employee classifications, determined solely by the amount of their "Basic Monthly Salary", which "shall be the employee's basic rate of monthly pay based upon the Employer's minimum normal work week and shall be exclusive of foreign increment and living allowances, overtime, bonus or additional compensation. The determination by the Employer of an employee's basic monthly salary as reported by the Employer shall be conclusive on such employee". We set out two other policy provisions:

"Any change in the amounts of benefits for an employee due to a change in his basic monthly salary will be effective on the date of change of basic monthly salary. Any increase in amounts of benefits on an employee not in active service on the day he becomes eligible therefor will not be effective until the day he returns to active service".

It is conceded that plaintiff's basic monthly salary at the time of his injury (November 17, 1956) and when he last worked, even spasmodically, and when he finally went on sick leave (September 12, 1958) was between $350 and $450, which automatically made him a Class 5 employee with $15,000 life insurance coverage. Mr. Marshall admitted and the evidence shows he has received all the benefits which a totally and permanently disabled Class 5 employee is entitled to receive.

However, on December 9, 1958, nearly three months after plaintiff went on sick leave and three months after the last day on which he was in "active service", a new union-negotiated wage agreement covering TWA employees was entered into and became effective. Under this agreement increased pay, entitled "retroactive pay", was granted to certain TWA employees, including plaintiff This retroactive pay was for time worked after October 1, 1957. Plaintiff received and cashed his check therefor. It is conceded that if this retroactive pay were added to the basic monthly salary paid to plaintiff, the total would be sufficient to raise him from a Class 5 employee, entitled to $15,000 life insurance, to a Class 6 employee, entitled to $22,500 life insurance. By this suit plaintiff asks the court to declare him to be entitled to the additional life insurance of $7,500.

The trial court found (1) that plaintiff was not in "active service" with TWA on December 9, 1958, when the union-negotiated wage agreement became effective nor at any time thereafter; (2) plaintiff's basic monthly salary placed him under Class 5; (3) that TWA, "by reasonable custom and practice, has never retroactively applied any new wage raises for insurance purposes unless the particular employee-insured is then actively employed or subsequently returns to work and such custom and practice was binding and conclusive for all purposes upon this plaintiff"; (4) that plaintiff has never paid insurance premiums for Class 6 benefits and is not entitled to any payments for Class 6 benefits. Judgment was entered for defendant and plaintiff prosecutes this appeal.

We believe and find that plaintiff was not in "active service" after September 12, 1958. The wage agreement of December 9, 1958, under which plaintiff received retroactive pay was not effective so as to lift him to Class 6. The plain provision of the policy as set forth verbatim, supra, clearly states that any increase in benefits "on an employee not in active service" "will not be effective until the day he returns to active service". Plaintiff never did return to active service.

The opinion of the Supreme Court of California in Boyer v. Travelers Insurance

Company, 7 Cal.2d 615, 61 P.2d 925, construed a group policy insuring any employee who "is actually at work on said day, or if not actually at work, from the date on which he returns to work". The court said:

" * * * it was the clear purpose of the policy provision to permit the insurance to become effective as to any employee only in the event that his health was such as to permit him to be 'actually at work' on the specified date following the making of his application. Or, putting it another way, it was the clear purpose of the policy provision to prevent the insurance from becoming effective as to any employee, such as a salesman, who was so seriously ill as to be continuously confined to his bed in a hospital and unable to be 'actually at work' on the date specified. * * * "

Elsey v. Prudential Insurance Co. of America, 10 Cir., 262 F.2d 432, required interpretation of a group certificate providing: "If the Employee is not actively at work on full time on the effective date indicated above, the effective date of the insurance evidenced by this Certificate will be deferred until the Employee's return to active work on full time." The court said:

" * * * When the provisions of the policy and the certificate are read together, it is evident that the parties intended that the effective date inserted in the certificate was conditioned upon the insured being actively at work on that date. To construe the policy and certificate as suggested by the plaintiff would negative the provision that if the employee is not actively at work on the effective date of the commencement of the insurance, it 'shall be deferred until return to active work on full time.' "

In Colantonio v. Equitable Life Assur. Society of the U.S., Ohio Com.Pl., 100 N.E. 2d 716, the group insurance policy was to become effective either for employees who were at work on April 1, 1949, or for those who later returned to work. A supervisory employee was ill but had been paid regular wages since February. The Ohio court said:

"We have no difficulty in finding that the evidence falls far short of establishing, by a preponderance thereof, the claim that on April 1, 1949 (the effective date of the contributory insurance amendment) the deceased was 'actively at work' for the employer. To hold otherwise would mean completely ignoring the phrase 'actively at work.' "

In that case it was ruled that insured had "returned to work", but in our case there is no contention that plaintiff ever "returned to active service". As a matter of fact he was ill, was receiving $60 per week sick benefits, was totally and permanently disabled and was not being carried on the employer's payroll.

In White v. Great American Reserve Ins. Co., Tex.Civ.App., 342 S.W.2d 793, 794, the employee received his group insurance certificate from his foreman while temporarily absent from a hospital. The policy provided it would become effective for absent employees upon their "actual return to work". The Texas court said:

"Since Hershel Ware was not actually at work on May 12, 1957, his insurance coverage under the express terms of the policy and the certificate was not to become effective until he returned to work."

■ We believe it is unnecessary to try to further define the phrase "active service". Both the words and the phrase are in common usage. Their meaning is clear, unambiguous and generally understood. Therefore the proper function of a court is not additional interpretation but rather application of the plain meaning.

This court (Consumers Money Order Corp. v. Pettit et al., Mo.App., 358 S.W.2d

422, 424) declared that insurance contracts like other contracts must be given a reasonable interpretation and that where the meaning of the insuring clauses are clear, the provisions must be enforced. The court said:

"The rule is firmly established in Missouri that insurance contracts, like other contracts, are accorded reasonable interpretations. The court discharges its full duty when it ascertains and gives effect to the intention of the parties, as disclosed by the contract they have made. The guiding principle is to view the contract in a reasonable, practical and sensible manner so as to accomplish the purpose for which it was made and intended rather than to view it in a strict, overly technical manner which would defeat its purpose or object. The application of the terms of an insurance policy to any given situation should likewise be determined by the same rules of common sense so as to carry out the intent of the parties thereto. 44 C.J.S. Insurance, § 296, page 1163; McKinney v. Truck Insurance Exchange, Mo.App., 324 S.W.2d 773 (3–6)."

Appellant cites definitions and cases as to the meaning of the word "retroactive". We do not find that word in the policy. The policy clearly provides that (1) raises in pay for employees not in active service shall not become effective until such employee returns to "active service" and (2) the basic monthly salary as reported by the employer shall be conclusive on the employee.

We believe that the trial court reached the proper result and the judgment is affirmed.

PER CURIAM.

The foregoing opinion of MAUGHMER, C., is adopted as the opinion of the Court.

All concur, including HIGGINS, S. J.