**In re CMC ELECTRONICS CORPORATION,**
**Debtor.**

**Bankruptcy No. 87–01297–293.**
**Claim Nos. 502, 503.**

United States Bankruptcy Court,
E.D. Missouri, E.D.

Dec. 20, 1993.

Arthur C. Unger, Westbury, NY, Trustee.

Joel A. Kunin, East St. Louis, IL, for trustee.

Phillip K. Gebhardt, St. Louis, MO, for claimants.

Peter D. Kerth, Clayton, MO.

### MEMORANDUM OPINION

DAVID P. McDONALD, Bankruptcy Judge.

### JURISDICTION

This Court has jurisdiction over the parties and subject matter of this proceeding pursuant to 28 U.S.C. §§ 1334, 151, and 157 and Local Rule 29 of the United States District Court for the Eastern District of Missouri. This is a "core proceeding" pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (B) which the Court may hear and determine.

### PROCEDURAL BACKGROUND

(1) R & T Development Company (R & T) filed proof of claim number 502 against the estate of CMC Electronics Corporation (CMC). The proof of claim sought payment of $126,326.88 due under a lease and indicated that R & T Development Company is a partnership comprised of Wayne Stephenson and Kent Friedman.

(2) The trustee objected to R & T's claim arguing that it failed to:

(a) "provide adequate information to establish a prima facie claim";

(b) "establish the amount due and owing after mitigation of damages by subsequent sale, lease, or other disposition of the subject property"; and

(c) "establish that the amount of [the] alleged claim is allowable."

(3) R & T filed a response to the trustee's objection, which included the calculations used to determine extent of the claim. R & T's response also asked the Court to find that $3,679.67 of its claim qualified for administrative expense status. Thirdly, R & T responded to the trustee's objection stating that under Bankruptcy Rule 3001(f) a properly executed and filed proof of claim "constitute[s] prima facie evidence of the validity and amount of the claim."

(4) The trustee amended his objection to claim 502 and asserted that the claim was subject to equitable subordination. The

trustee reasoned that because R & T's partners, Kent Friedman and Wayne Stephenson, were insiders of CMC the terms of the lease between CMC and R & T were not negotiated at arms' length. The trustee maintained that because the lease rate was not the result of arms' length negotiation, section 510 of the Bankruptcy Code applied.[1]

(5) BW Development Company (BW) filed proof of claim number 503 against the CMC's estate. Proof of claim 503 sought payment of $225,015.22 due under a lease and indicated that BW Development Company is a partnership comprised of Wayne Stephenson and Byrle Northup.

(6) The trustee objected to BW's claim arguing that Proof of Claim 503 failed to:

(a) "provide adequate information to establish a prima facie claim";

(b) "establish the amount due and owing after mitigation of damages by subsequent sale, lease, or other disposition of the subject property"; and

(c) "establish that the amount of [the] alleged claim is allowable."

(7) BW filed a response to the trustee's objection, which included the calculations used to determine extent of its claim. The response also indicated the extent to which BW had mitigated the damages it incurred as a result of CMC's rejection of the lease between it and BW. Thirdly, BW responded to the trustee's objection stating that, under Bankruptcy Rule 3001(f), a properly executed and filed proof of claim "constitute[s] prima facie evidence of the validity and amount of the claim" and that claim 503 set forth "facts sufficient to establish a prima facie claim under" that rule.

(8) The trustee amended his objection to claim 503 and asserted that the claim was subject to subordination under either of two theories. The trustee first argued that the terms of CMC's plan of reorganization precluded payment of BW's claim. The trustee's amended objection to claim number 503 argued that because Byrle Northup was an equity security holder of CMC and because the plan provided for the subordination of the claims and interests of CMC's equity security holders, the Court should subordinate BW's claim under the plan as one belonging to an equity security holder.

Second, the trustee maintained that section 510 of the Bankruptcy Code applied to equitably subordinate claim 503 to the claims of all other creditors. To support this position, the trustee reasoned that because BW's partners, Byrle Northup and Wayne Stephenson, were insiders of CMC the terms of the lease between CMC and BW were not negotiated at arms' length. The trustee maintained that because the lease rate was not the result of arms' length negotiation Section 510 of the Bankruptcy Code applied.[2]

(9) Following a motion from R & T, the Court held a single hearing on claims 502 and 503. The trustee's attorney argued that the terms of the confirmed plan, which precluded payment of the claims and interests of insiders of CMC (class 6 parties), barred the payment of the claims that R & T and BW had filed. The Court orally ruled that the two partnerships did not qualify as class 6 claimants under the plan of reorganization and that the plan did not bar payment of claims 502 and 503. The trustee asked the Court to reconsider its oral ruling and the Court agreed to accept briefs from the parties addressing the issue of whether the provisions of class 6 of the plan includes the two partnerships.

The trustee's attorney asked the Court to continue the hearing with regard to claim 503 but agreed to try claim 502. After the Court heard testimony from R & T's principals it agreed to allow the parties to include, in their post-trial briefs, issues besides the question of BW and R & T's inclusion in class 6 under the plan. Specifically, the Court agreed to consider arguments relating to

---

1. The Court informed the trustee at the hearing on claims 502 and 503 that Bankruptcy Rule 7001(8) required him to file an adversary proceeding against R & T if he wanted the Court to consider applying Section 510 of the Bankruptcy Code to equitably subordinate claim 502.

2. The Court informed the trustee at the hearing on claims 502 and 503 that, Bankruptcy Rule 7001(8) required him to file an adversary proceeding against BW if he wanted the Court to consider applying Section 510 of the Bankruptcy Code to equitably subordinate claim 503.

both the allowability of R & T's claim and whether any portion of that claim qualifies for administrative expense status.

(10) The trustee and R & T each filed post-trial briefs [3] in accord with the Court's instruction. BW did not file a brief. Counsel for R & T also represents BW and because the issue of membership in class 6 is the same for both partnerships, a brief from BW would echo the arguments R & T asserts. That part of this decision dealing with whether a partnership comprised of insiders belongs in class 6 of the plan will bind BW too.

### FACTUAL BACKGROUND

After considering the entire record, the Court makes the following findings of fact:

(1) Kent Friedman was CMC's President in February of 1986. At that time he owned 500 shares of CMC stock.[4]

(2) Wayne Stephenson worked for CMC from 1978 through September of 1985 when he resigned his post with the company. From November 1985 through November 1986, Mr. Stephenson served as a paid consultant to CMC. In October of 1987, Mr. Stephenson rejoined the Debtor as an employee and remained in that capacity until November of 1987. In 1986, Mr. Stephenson owned 24,000 shares of CMC stock.

(3) Mr. Stanton stated in his opening statement at the hearing on claims 502 and 503 that Byrle Northup owned 1,239,520 shares, or 52% of the Debtor's equity, on the date CMC filed its bankruptcy petition. The trustee did not submit any formal proof of this but BW and R & T concede that Kent Friedman, Wayne Stephenson and Byrle Northup were equity security holders of CMC.

(4) Mr. Friedman and Mr. Stephenson formed R & T Development Company, a partnership organized under the laws of the State of Missouri. R & T owned improved, real property in Buford, Georgia that it leased to CMC.

(5) Mr. Northup and Mr. Stephenson formed BW Development Company, a general partnership. BW owned improved, real property in Arlington, Texas that it leased to CMC.

(6) After CMC filed its bankruptcy petition in this Court, the trustee appointed to the case rejected the leases CMC had with R & T and BW.

### DISCUSSION

The Debtor's plan of reorganization defines class 6 as "the Interests of Debtor's equity security holders and Claims of Debtor's equity security holders, including, without limitation, the claim of Gail A. Northup/Fyhrie under the Northup promissory note." The Debtor's plan of reorganization further provides that "[h]olders of Class 6 Allowed Claims and Interests shall receive no amount under the Plan."

The trustee maintains that BW and R & T's claims fall within the scope of class 6 of the reorganization plan. To support this position, the trustee points the Court to the law of partnership in Missouri which does not recognize a partnership as a separate, legal entity. Counsel for the trustee argues that in Missouri neither R & T nor BW could sue to enforce the debts that underlie claims 502 and 503 and that because section 558 of the Bankruptcy Code preserves state law defenses for a debtor's use in bankruptcy, the partnerships should not be able to sue to enforce their rights in this Court. If the partnerships cannot maintain suits to recover the debts owed to them, then, the trustee reasons, the only way for them to collect the sums due to them under the leases is for the principals to bring suit. Unfortunately for the principals, they are equity holders of the debtor. This status, the trustee insists, bars their recovering anything from the Debtor's estate under the terms of the confirmed plan.

---

3. R & T also filed Claimant's First Amended Proposed Findings of Facts and Conclusions of Law With Respect To Claim No. 502 after the hearing on Claims 502 and 503.

4. Steve Stanton, attorney for the trustee, represented to the Court at the hearing on claims 502 and 503 that CMC's stock register indicates that Kent Friedman owned 112,360 shares of the Debtor's stock. The trustee did not submit any evidence to substantiate this representation. For the purpose of this decision the exact number of shares owned by Kent Friedman is not significant.

R & T argued in its post-trial filings that, under the Bankruptcy Code, a partnership is an entity separate and distinct from its principals, capable of filing a proof of claim against an estate. The partnership constructed a statutory argument to support its position. Counsel for R & T first directed the Court to section 501 of the Code which states that "(a) A creditor ... may file a proof of claim ..." and then invoked section 503 of the Code which provides that "(a) An entity may file a request for payment of an administrative expense." The partnership also cited section 101(9) of the Code which uses the word "entity" to define the term "creditor." Next, the partnership referred the Court to section 101(14)'s use of the term "person" to define the term "entity" and section 101(35)'s inclusion of "partnership" in its definition of "person". Stringing together these various sections, the partnership concluded that the Bankruptcy Code recognizes a partnership as an entity separate from those individuals who comprise it. The partnership cited *In re Aboussie Bros. Construction Co.*, 8 B.R. 302 (Bankr.E.D.Mo.1981), for the proposition that for bankruptcy purposes, partnerships are recognized as entities separate from the partners who comprise them.

Counsel for the partnerships argues that the facts that, under Missouri law, a partnership may hold title to land and that land titled in a partnership's name can only be transferred in the partnership's name also support his position. He refers the Court to the Missouri Court of Appeals's *McKinney v. Truck Insurance Exchange*, 324 S.W.2d 773 (Mo.Ct.App.1959) case which, in an effort to enforce the intent of the parties to an insurance contract, recognized a partnership as an entity separate from its partners. R & T maintains that because it held title to the real property CMC leased from it and because the lease contract was between the partnership and the Debtor, the parties intended to treat the partnership as an entity distinct from its partners.

At the hearing on this matter, the Court orally ruled that BW and R & T were not class 6 claimants and that the Debtor's plan of reorganization, therefore, did not bar the payment of claims 502 and 503. Upon consideration of the parties' post-hearing filings and a review of the law governing this case, the Court concludes that its prior oral ruling was incorrect and therefore now holds that the Debtor's plan of reorganization bars any payment to BW and R & T.

■ Whether a creditor has a valid claim against a debtor's estate is a matter determined by the rules of state law. *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) (citing *Vanston Bondholders Protective Comm. v. Green,* 329 U.S. 156, 161, 67 S.Ct. 237, 239, 91 L.Ed. 162 (1946)). One case in which a federal court looked to state law to determine whether a party could maintain its suit in federal court was *MacLean v. Ozark Mountain Country Mall (In re Branson Mall, Inc.),* 970 F.2d 456 (8th Cir.1992). *In re Branson Mall, Inc.* involved McLean, an Arizona architectural concern, that contracted to perform services within the State of Missouri before it registered to do business in the state. 970 F.2d at 459. The Missouri statutes governing the licensing of architects provided that an architectural concern that had not registered with the state could not enforce a contract it entered into to practice architecture or perform architectural services in Missouri. *Id.* at 458. The party with whom McLean had contracted sold the property to another who subsequently filed bankruptcy. *Id.* McLean filed a suit to enforce an architect's lien against the property on which it had worked. *Id.* at 457. The parties consented to remove McLean's lien enforcement suit from state court to the bankruptcy court in which the purchaser had filed its bankruptcy petition. 970 F.2d at 458. The bankruptcy court granted summary judgement to the defendants who had argued that the Missouri statutes rendered McLean's contract unenforceable. *Id.* The district court affirmed the bankruptcy court's decision. *Id.* The Eighth Circuit found that the parties had operated under a contract before McLean registered to perform architectural services in Missouri and upheld the bankruptcy court's determination that the Missouri statutes barred the breach of contract counts of McLean's suit. 970 F.2d at 461. The Circuit Court also held that the bankruptcy court properly refused to invoke its equity powers

to permit McLean to recover the fair value of the services it had provided to the debtor's successor in interest. *Id.* at 462. Judge Wollman, writing for the Circuit panel stated that "the Missouri legislature has clearly expressed its policy with regard to unregistered architects [and] equitable 'principles cannot override the mandate of the legislature ... that only authorized corporations may have a lien, and it is to that branch of the government that arguments concerning the wisdom and equity of the statute should be addressed.'" *Id.* (quoting *Maran–Cooke Inc. v. Purler Excavating, Inc.,* 585 S.W.2d 38 (Mo.1979) (en banc)).

In a factually similar case, the Tenth Circuit held that an unlicensed engineering firm could not recover the value of the services it rendered under a contract that state licensing statutes deemed unenforceable even though the firm had sought relief in federal court under a theory of quantum meruit. *Ellers, Oakley, Chester & Rike, Inc. v. St. Louis Air Cargo Services, Inc.,* 984 F.2d 1108, 1112 (10th Cir.1993).

The Bankruptcy Court for the Western District of Missouri referred to state law to determine the rights of the parties in a turnover context in *Collet Ventures, Inc. v. Marchese (In re Collet Ventures, Inc.),* 106 B.R. 607. In *In re Collet Ventures, Inc.,* the trustee sought the turnover of rent from some of the debtor's tenants. *Id.* at 609. The tenants argued that they had performed work for the debtor in exchange for rent-free occupancy. *Id.* at 611. The tenants did not produce any written proof of their alleged agreement with the debtor. *Id.* On rehearing, the bankruptcy court found that because Missouri's Statute of Frauds barred the tenants' argument, it had properly granted judgement in favor of the trustee.[5]

■ In light of the aforementioned authority, the Court agrees with the trustee's claim that if under state law the partnerships could not have sued to collect the debts owed to them then they cannot maintain claims in their name against the Debtor's estate.

■ In Missouri, a partnership is not recognized as a "separate or juristic entity" and so cannot sue in its own name to collect a debt owed to it. *Allgeier, Martin & Assocs. v. Ashmore,* 508 S.W.2d 524, 525 (Mo.Ct.App. 1974). Rather, maintenance of a suit based upon a debt owed to a Missouri partnership requires the joinder of all the partnership's partners as party-plaintiffs. *Id.* This rule arises from Missouri's adherence to the common law or aggregate theory of partnership which views a promise to a partnership as "a single promise to perform to [all the partnership's partners] jointly." *McClain v. Buechner,* 776 S.W.2d 481, 483 (Mo.Ct.App.1989). Missouri courts have emphasized that the state's adoption of the Uniform Partnership Act did not altered the well-established common law rule that a partnership cannot bring suit in its name to collect a debt owed to it. *Ward v. State Farm Mutual Tornado Ins. Co. of Mo.,* 441 S.W.2d 1, 5 (Mo.1969); *McClain v. Buechner,* 776 S.W.2d 481, 484 (Mo.Ct.App.1989); *N.E. & R. Partnership v. Stone,* 745 S.W.2d 266 (Mo.Ct.App.1988); *Allgeier, Martin v. Ashmore,* 508 S.W.2d 524, 525 (Mo.Ct.App.1974) (adoption of the Uniform Partnership Act "did not transform a partnership into a juristic entity").

Counsel for the claimants cites *McKinney v. Truck Ins. Exch.,* 324 S.W.2d 773 (Mo.Ct. App.1959), as authority for the proposition that "a partnership will be considered a legal entity separate from its partners if the parties intended that the partnership be considered a separate legal entity in the transaction." R & T's Post–Trial Brief With Respect To Claim 502 at 3. True, the Missouri Court of Appeals, in the *McKinney* case recognized the partnership involved in that case as a separate legal entity. *Id.* at 778. That case involved the McKinney brothers who operated a glass works. 324 S.W.2d at 775. In conjunction with their business, the McKinneys procured workers' compensation

---

**5.** The *In re Collet Ventures, Inc.* court quoted the Missouri Statute of Frauds thus, "[n]o action shall be brought ... to charge any person ... upon any agreement for the sale of lands, tenements, hereditament, or an interest in or concerning them, or any lease thereof, for a time longer than a year unless the agreement upon which the action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith," 106 B.R. at 611 (quoting Mo.Rev.Stat. § 432.-010).

insurance. *Id.* The insurance policy named "Ralph and Paul McKinney dba Acme Glass" as the insured. *Id.* Paul McKinney also operated a farm business separate from the partnership's glass business. 324 S.W.2d at 775. When one of Paul's farm employees suffered an injury and sued him, Paul insisted that the partnership's insurer defend him. *Id.* Paul McKinney argued that because the partnership had no separate legal existence, the insurer, by contracting with the partnership had actually issued coverage against workers' compensation claims to him and his brother as individuals. *Id.*

The *McKinney* court recognized that Missouri subscribes to the aggregate theory of partnership and that the adoption of the Uniform Partnership Act did not alter that. *Id.* However, the *McKinney* court then observed:

> "grave danger lurks in the unguarded application of potentially deceptive generalities; and although Missouri courts usually follow the aggregate theory as to partnership, we think that it should not and cannot be announced, as an arbitrary, absolute, unqualified and unyielding rule that under no circumstances and for no purposes may a partnership be considered and treated as an entity."

324 S.W.2d at 776.

The *McKinney* court then stated that in interpreting insurance contracts, it had to give effect to the intent of the parties. *Id.* at 777. Because the insurance contract evidenced the parties' intent to treat the partnership as a separate entity, the court reasoned that the only way to give effect to their intent was to recognize the partnership as an entity separate from the McKinney brothers. *Id.* The court concluded that the insurer had no duty to defend Paul McKinney because it had contracted to insure and defend the McKinney brothers' partnership, an entity, and not the brothers themselves. *Id.* at 778.

R & T reads the *McKinney* case too broadly. The cases that follow the *McKinney* decision arise in the insurance context. *Marshall v. Conn. Gen. Life Ins. Co.*, 371 S.W.2d 363 (Mo.Ct.App.1963); *Consumers Money Order Corp. v. Pettit*, 358 S.W.2d 422

(Mo.Ct.App.1962). The Missouri Supreme Court commented on the *McKinney* decision in *Ward v. State Farm Mutual Tornado Ins. Co. of Mo.*, 441 S.W.2d 1, 5 (Mo.1969). After crediting the *McKinney* court for properly stating the law regarding the interpretation of insurance contracts in Missouri, the *Ward* court stated that:

> We note the McKinney case, supra, recognizes that "courts have given effect to the intention of contracting parties by treating a partnership as an entity in determining and delimiting the coverage afforded by insurance policies issued to the partnership." [citation omitted] However, the McKinney case does not assist in our determination of the issues in this case. We cannot infer from the policy provisions an intention to change the substantive law of the State. [citation omitted] In any event, the fact situation in the McKinney case is not similar to the situation presented here, and we have not abandoned the *aggregate* theory of partnership in Missouri.

441 S.W.2d at 4. (emphasis in original).

Recent Missouri cases involving debt collection have applied the aggregate theory of partnership and refused to recognize partnerships as separate entities capable of maintaining suits to enforce a debts owed to them. *McClain v. Buechner*, 776 S.W.2d 481, 484 (Mo.Ct.App.1989); *N.E. & R. Partnership v. Stone*, 745 S.W.2d 266 (Mo.Ct.App.1988); *Allgeier, Martin & Assocs. v. Ashmore*, 508 S.W.2d 524, 525 (Mo.Ct.App.1974). The *N.E. & R. Partnership v. Stone* case parallels the case now before the Court in that it involved more than just a simple collection action. That case involved a general partnership that functioned as the general partner to a limited partnership. 745 S.W.2d at 266. The general partnership tried to maintain a suit on behalf of the limited partnership. *Id.* The *N.E. & R. Partnership* court held that the general partners of the general partnership that functioned as the limited partnership's general partner had to bring the suit on behalf of the limited partnership because a Missouri partnership cannot sue in its own name. *Id.* (citing *Allgeier, Martin & Assocs. v. Ashmore*, 508 S.W.2d 524, 525 (Mo.Ct.App.

1974)). The Missouri Supreme Court's comments in *Ward* and the recent authority applying the aggregate theory of partnership in the debt collection context convince the Court that *McKinney*'s application is properly limited to the insurance context.

The claimants contend that *In re Aboussie Bros. Constr. Co.*, 8 B.R. 302 (Bankr.E.D.Mo. 1981), stands for the proposition that a partnership, for bankruptcy purposes, is an entity separate from its partners. The partnerships read *In re Aboussie Bros. Constr. Co.* too broadly. In that case, the bankruptcy court refused to enjoin litigation pending against the individual general partners of a partnership where the partnership had filed for bankruptcy court protection. *Id.* The district court, in affirming the bankruptcy court's decision, stated that "[i]t is generally accepted that, for bankruptcy purposes, a partnership is a separate and distinct entity from its partners." *Id.* at 303 (citations omitted). However, the issue in the *In re Aboussie Bros. Constr. Co.* case, whether the partners of a debtor-partnership could receive the benefit of the enjoinment of state court suits against them is very different from the issue now before the Court, namely, whether in the face of state common law that refuses to recognize a partnership as a juristic entity, this Court can recognize a partnership as a legal entity separate from its partners for purposes of maintaining a claim against the debtor's estate. This Court does not believe that *In re Aboussie Bros. Constr. Co.* applies to the facts now before it.

■ In conclusion, the Court finds that neither R & T nor BW could have maintained suits in Missouri courts to collect the amounts which underlie the claims they have filed against CMC's estate. Hence those claims should have been brought by the general partners of those partnerships. The Debtor's plan of reorganization states that CMC's equity security holders will not receive any payment on their claims and because the general partners of R & T and BW are equity security holders of CMC, claims 502 and 503 fall within class 6 of the plan of reorganization and cannot be paid.

An Order consistent with this Memorandum Opinion will be entered this date.