Douglass *et al. v.* Sharp *et al.*

(*Knoxville,* September Term, 1951.)

Opinion filed June 7, 1952.

GREEN, WEBB & McCAMPBELL, of Knoxville, and JOE AGEE, of LaFollette, for appellants.

HARRY B. BROWN, of Jellico, for appellees.

MR. JUSTICE BURNETT delivered the opinion of the Court.

This is a Workmen's Compensation suit in which the Chancellor awarded the widow and minor child of deceased employee compensation under the Tennessee Workmen's Compensation Law. Code, Sec 6851 et seq.

The insured and the insurer have appealed and assigned error. No question is made as to the fact that the

deceased received an injury in the course of his employment from which he died and that he left the complainant widow and the minor child as his dependents entitled to compensation under the Tennessee Workmen's Compensation Law. The appellants say correctly that two questions only are involved in this appeal to wit: "(1) Was the deceased, George F. Douglas, an employee of Sharp, Sharp and Walden, partners doing business as Slick Rock Coal Company at the time he met his death as the result of an accident? (2) Is the Coal Operators Casualty Company an insurer of the accident under the Workmen's Compensation Law in which George F. Douglas lost his life?"

Robert E. Sharp, Elbert Sharp and Theodore Walden formed a partnership under the name of Sharp and Walden and leased certain property from Francis Brothers from which they mined coal. During the period of this partnership they took out a policy of Workmen's Compensation Insurance with the Coal Operators Casualty Company. During the pendency of this first policy, written in 1948, the assured's name was changed from that of Sharp and Walden to these partners doing business as the Slick Rock Coal Company. About the end of the first year of this policy the deceased received an injury and was paid compensation by this company for this injury. The policy of insurance, under this partnership doing business as Slick Rock Coal Company, was again renewed on January 19, 1949 and ran to January 19, 1950. On September 6, 1949, the deceased met his death in an accident by a slide of rock falling on him and killing him. The premium on this insurance policy was paid by Sharp, Sharp & Walden doing business as the Slick Rock Coal Company during the year when this accident happened. They paid $150 initially and then paid a certain amount

on the pay roll of the company periodically as they reported the pay roll to the insurance company's agent.

The defense of the Sharps and the insurance company is that in July of 1949, they subleased this coal mining property to one Oscar Reynolds and that the insurance company did not write a policy or change the owners from that of the Sharps and Walden to Reynolds. The purported lease to Reynolds was dated July 22, 1949, but was not filed for record until December of 1949, some three months after the death of the employee. The lease of Francis Brothers to the Sharps and Walden contained the provision that no sublease of the property could be made without the consent of Brothers. This consent was not gained and Mr. Sharp testified that it was merely overlooked by them and was probably due to negligence on his part that no consent to sublease was secured. As said it was during the term of this sublease to Reynolds that the injuries and death sued for occurred. Obviously the defense is thus made that since Douglas was killed during the lease to Reynolds and since the insurance company had no knowledge of this lease or had not consented to cover Reynolds that then the insurance company or the Sharps are not liable for the injuries and death of Douglas.

 The trial court held that the deceased employee's wages were taken into consideration in computing the premiums paid to the insurance company. This is supported by the evidence which shows that the deceased was working in this mine on the day that he received his injury and by a notation of the agent for the insurance company of the fact that he worked some two and one-half days during the time the final premiums were computed and the pay roll returned upon which they were paid. It was also shown that he was working there at that time

by a fellow employee who talked to him just a few minutes before the slide killed him and who saw him there at the time immediately before and after his death. It is also further supported by the fact that one of the partners, Walden, accompanied Reynolds to pay these premiums. The record further convinces us that the Sharps did pay these premiums with their own checks. The Chancellor also held that the purported sublease to Reynolds of the Slick Rock Coal Company was in reality a subterfuge and that it was merely an operative arrangement by the partners who owned the Slick Rock Coal Company with Reynolds. The evidence when taken on its face does not support this finding because it is shown that a duly executed lease from the Sharps to Reynolds with the testimony of Sharp that it was an outright lease to Reynolds. The proof though shows and the Chancellor was justified in concluding as he did that it was merely an operating arrangement because the Sharps continued to take all the coal mined from this mine by Reynolds. They retained control over the insurance policy by providing in the lease to Reynolds that they do so. They paid the premium on the insurance both for their protection and for the protection of the employees of the mine so they testify. This sublease with Reynolds was made contrary to the terms of the lease under which the Sharps held the property and as far as this record shows, and there is no evidence to the contrary, the employee was working for the Slick Rock Coal Company for whom he had worked off and on for at least one year and one-half. The Sharps doing business as the Slick Rock Coal Company did not do anything to denude themselves of liability as employers of the workmen in that mine unless such lease would be considered so. Apparently the Sharps did not think that the lessee, Reynolds, was financially able to handle the

matter. They did not make any effort to get a sublease to him; they did not record this lease at the time and give notice to the world of the sublease; they retained the entire output of the coal; they carried this insurance protection for the employees of this mine. Reynolds was made a party defendant to this lawsuit; he did not answer the suit; he was present in court at the time of the trial and was then informed of his rights and possible liabilities and a pro confesso was asked against him and when asked by the court if he did not want to testify, declined to do so and he was not put on the witness stand by either party.

The insurance premiums were accepted on the basis of the payroll on this policy by the agent of the insurance company through November 1949 or two months after the death of the employee. The agent of the company testifies that the policy was continued in the name of the Slick Rock Coal Company and remained in force from January 19, 1949 to January 19, 1950. On May 23, 1949 the agent for the insurance company wrote the company in reference to this policy and asked that the company send them an endorsement transferring the name from the Slick Rock Coal Company to that of Oscar Reynolds, Individual. On May 26th, the company responded to this request as follows:

"Slick Rock Coal Company has apparently sold its operations to Oscar Reynolds. If this is the new owner, a new policy should be issued and the present policy cancelled and premium adjusted. We rather think this is the proper procedure and desirable thing to do. To issue a new policy, would you please give us the post office address of Mr. Reynolds."

Insofar as this record shows there was nothing else done by the company after receiving this notice. The

agents or no one else ever did anything in reference to a transfer to Reynolds and the policy continued on the entire year in the name of Slick Rock Coal Company. The time these letters were written was approximately two months before the date of the lease to Reynolds. On August 16, 1949 some twenty-one or twenty-two days before the death of the employee the insurance company issued a rider on this policy of a change in rate and it was issued by the insurance company to the Slick Rock Coal Company. If there was a change of the owners of this mine from the Sharps to Reynolds the insurance company had some notice of the fact and since they did nothing further than that indicated above we must conclude that they accepted the situation as it was and continued to cover the employees of this mine. Whether or not this was an operating contract to Reynolds, or what it was, it is not necessary to decide because we feel that in view of the happenings in this case that this company clearly covered the employees of the mine at the time of this fatal accident. Since the Sharps procured insurance with this company to cover the liability in question and paid the required premium therefor through and beyond the time of this injury it seems to us that the company must perform its obligation by paying the award.

 It is clear that in this State an employee's action under the Workmen's Compensation Act may be against the employer and the insurer jointly. *American Mutual Liability Insurance Co.* v. *Patrick*, 157 Tenn. 618, 11 S. W. (2d) 872. The contract that the insurance company makes in these Workmen's Compensation cases is not one of guaranty but is one that creates a primary liability. It possesses characteristics and incidents that cause its construction to be with special reference to the subject of the contract. *United States Fidelity Company*

v. *Booth,* 164 Tenn. 41, 49, 45 S. W. (2d) 1075, 1077. Our Workmen's Compensation Law must be read into the insurance contract. *American Mutual Liability Insurance Co.* v. *Patrick,* supra. Code Section 6899 among other things directs that the insurance company pay the benefits to the persons entitled thereto promptly, and that "this obligation shall not be affected by any default of the insured for the injury or by any default in the giving of any notice required by such policy or otherwise." Then follows the direction that such agreement should be construed as a direct promise to the insurer to the person entitled to compensation, etc. It seems to us now, as it did to this Court in *United States Fidelity Company* v. *Booth,* supra, that:

"The contract of insurance was entered into by the parties in recognition and furtherance of the policy of the law to make certain the payment of awards of compensation to injured employees. The contract should be construed with due regard to this purpose, especially in an action by the injured employee and his dependents. It being a primary purpose of the contract to protect the employees of the business of the partnership, we can find no justification for holding that this protection was annulled and avoided by the mere withdrawal of one of the partners. Neither the essence of the contract nor the degree nor extent of the liability of the insurer was affected thereby."

It is very easy for us to paraphrase this language by inserting the facts of the instant case which seems to us to fit this reasoning.

From the facts above outlined it certainly appears to have been no particular concern with the insurance company as to who their insured was. They clearly

indicated in the letter that they wrote in May that they would write a policy on Reynolds. Apparently, in the absence of anything to the contrary, since the premiums were paid on this policy as they were in the name of Slick Rock Coal Company on through, we think we are clearly entitled to assume that they were not concerned as to who their insured was. We think that the Chancellor was justified in assuming under all the facts that this was a mere management contract and that in reality the injured employee was an employee of the Slick Rock Coal Company.

For the reasons herein stated the decree below must be affirmed.