GENERAL GUARANTY INSURANCE COMPANY,
Plaintiff in Error,

*v.*

ROBERT SCUDGINTON, Defendant in Error.

376 S. W. 2d 464

(*Knoxville,* September Term, 1963.)

Opinion filed March 5, 1964.

J. PAUL COLEMAN, Johnson City, of counsel, WINSTON, McCLAIN & COLEMAN, Johnson City, for plaintiff in error.

FRED M. HARTMAN, Greeneville, for defendant in error.

MR. JUSTICE HOLMES delivered the opinion of the Court.

This is a Workmen's Compensation case in which the employee sued both the employer and the employer's alleged insurance carrier. The petitioner alleges that he sustained an accidental injury at about 10:00 A.M., on May 10, 1963. The petitioner is a carpenter. While sawing a board with an electric saw, he severed the greater part of his thumb, his index finger, and second finger.

The defendant insurance company, in its answer, denies that at the time of the accident it was the insurance carrier of the employer, Melvin Riddle. Its answer further states that at 9:00 A.M., on May 10, 1963 Melvin Riddle came to the office of the agent of the defendant company in Greeneville, Tennessee, and requested that a binder be issued by the agent covering Riddle's liability under the Tennessee Workmen's Compensation Act, that a binder was issued by the defendant company effective as of 9:30 A.M., on May 10, 1963. The answer states that the petitioner's injury occurred prior to 9:30 A.M., on that date.

The employer, Riddle, in his answer, states that, according to his information and belief, the accident occurred after 9:30 A.M., on May 10, 1963. The answer of the employer admits that he and his employees are operating under the Tennessee Workmen's Compensation Act and states that the defendant insurance company was at the time of the happening of the accident his insurance carrier under the Compensation Act.

The Trial Judge found that the petitioner sustained his accidental injury after 9:30 A.M., on May 10, 1963 and awarded the petitioner compensation as provided by the statute for the loss of his thumb, first finger, and second finger, together with twelve weeks total temporary disability benefits and medical and hospital expenses. In addition, he awarded to the petitioner benefits for 20% permanent partial disability to the body as a whole. This judgment was rendered against both defendants. The employer, Riddle, did not appeal from this award. The defendant insurance company duly filed its motion for a new trial, which was overruled, and has perfected its appeal to this Court and assigned errors.

The petitioner and several other witnesses testified that petitioner's accident happened after 9:30 A.M., on May 10, 1963 and gave the various reasons why they were certain of the time. A nurse at the hospital, to which petitioner was taken following his injury, testified that petitioner arrived at the hospital shortly prior to 9:00 A.M., that morning and was in the operating room before 9:15. The doctor, who operated on petitioner and treated him for his injuries, testified to facts with reference to time which made it impossible for the injury to have occurred after 9:30 that morning.

The first question to be determined by the Court is the proper scope of review in this Court on the issue of whether or not the defendant insurance company was the employer's insurance carrier at the time of the happening of the accident. This defendant contends that the rule that this Court will affirm the Trial Judge, if there is any material evidence to support his finding, is not applicable in determining whether or not the contract of Workmen's Compensation insurance was in force at the time the accidental injury was sustained.

■ ■ Under our Workmen's Compensation Act, T.C.A. secs. 50-901 to 50-1211, an employee may bring suit directly against his employer's insuror for benefits under the Act. *American Mutual Liability Ins. Co. v. Patrick,* 157 Tenn. 618, 11 S.W.2d 872; *Hartford Accident & Indemnity Co. v. Hay,* 159 Tenn. 202, 17 S.W.2d 904. The provisions of the Workmen's Compensation Act must be read into the contract of insurance and such contract of insurance is not one of suretyship or guaranty but "is one that creates a primary liability." *Douglass v. Sharp,* 194 Tenn. 11, 17 and 18, 249 S.W.2d 999, 1001.

T.C.A. sec. 50-1209 provides that a policy of Workmen's Compensation insurance "shall be construed to be a direct promise by the insurer to the person entitled to compensation under the Workmen's Compensation Law."

By statutory definition, T.C.A. sec. 50-902, the word "employer" includes the employer's insurer unless otherwise provided.

When raised in a Workmen's Compensation case brought against an insurer, the question of whether or not the insurer's policy was in effect at the time of the accident is an issue which of necessity must be decided in order to determine the rights and liabilities of the parties under the Workmen's Compensation Law. In states in which Workmen's Compensation cases are tried before a commission rather than a court, it is generally held that the commission has jurisdiction as an incident of a trial of a compensation case to determine whether or not a policy of Workmen's Compensation insurance was in force at the time of the accident, and the judicial review of the finding of the commission on that issue is the same as on other issues decided by the commission. In so holding, the Oklahoma Court, in *Oklahoma Steel Corp. v. Chafin,* Okl., 349 P.2d 12, quoted with approval from an earlier decision of that Court, as follows:

"Under the provisions of section 2, Chapter 29, Sessions Laws 1933, 85 Okl.St.Ann. sec. 41, the State Industrial Commission is vested with jurisdiction and authority to determine the liability of an insurance carrier to an injured employee of the insured, and as an incident to the authority expressly granted, may determine from the evidence presented, whether there

was a relationship of employer and insurance carrier in effect upon the date of the injury. The findings of the Commission in this regard will not be disturbed by this court when supported by competent evidence.

\* \* \* \* \* \*

"* * * The primary proposition presented was whether or not the relationship of employer and insurance carrier was in existence on the date of the injury. It is necessary for the commission to determine whether there was such a relationship in order to discharge its statutory duty in determining the liability of such insurance carrier to the injured workman. The fact that contractual rights between the employer and the insurance carrier are incidentally involved does not deprive the Industrial Commission of its jurisdiction to determine a fact which is essential to the discharge of a function enjoined upon it by statute." 349 P.2d 14.

See also *Greene v. Spivey*, 236 N.C. 435, 73 S.E.2d 488; *Lawrence Coal Co. v. Boggs*, 309 Ky. 646, 218 S.W.2d 670; *Travelers Ins. Co. v. Sneddon*, 249 Iowa 393, 86 N.W.2d 870. In the last cited case, decisions from a number of states are reviewed by the Court.

The determination of whether or not the policy of insurance sued on by the employee was in force at the time of the accident is in many respects analogous to the determination of whether or not a petitioner in a suit for death benefits under the Workmen's Compensation Act was a dependent of the deceased employee at the time of the accident resulting in death. In the one case, the issue is whether or not the insurance company may be held liable as a defendant, and, in the other, the issue is whether the plaintiff is a beneficiary under the Act and

may be entitled to recover death benefits. In cases where the question of dependency of the petitioner and, therefore, the question of whether or not the petitioner could maintain the action is involved, the Court has always held that a finding of dependency will not be disturbed if there is any evidence to support it. *Sweeton v. Tenn. Consol. Coal Co.*, 179 Tenn. 216, 218, 164 S.W.2d 1010; *Wamser, Etc. v. Teasley*, 205 Tenn. 78, 84, 325 S.W.2d 540, 543.

██ In the present case, the question of whether or not petitioner sustained accidental injury after the defendant's policy of insurance became effective is one of fact, and the finding of the Trial Judge on that issue of fact will not be disturbed if supported by material evidence. As stated, a number of witnesses who were in position to know when the accident happened testified that it occurred after 9:30 A.M., on May 10, 1963, at which time the defendant's insurance contract became effective. The assignments of error relating to questions of insurance coverage are overruled.

The next assignment of error relates to the action of the Trial Judge in awarding petitioner benefits for 20% permanent partial disability to the body as a whole in addition to allowing the benefits provided in the schedule for the loss of a thumb, a first finger, and a second finger. In making the award for permanent partial disability to the body as a whole, the Trial Judge, in his findings of fact, stated:

"* * * and in addition thereto, the Court observed the petitioner's injured hand, with the thumb, the first and second fingers cut off, and the petitioner has lost his power to grip lumber with his hand as a carpenter,

and, by reason of his limited education, and his earning power in the open market, has been impaired, and the Court awards the petitioner judgment for a permanent reduction in earning capacity to the body as a whole, of twenty (20) percent; and the medical and hospital bills allowed by Statute.''

In describing petitioner's injury, the doctor, who operated upon and treated him and who was the only medical witness, testified:

"He still has a portion of the thumb and a tiny portion of this, my impression at the time of surgery was that he might be able to bring the thumb over to that little portion and be of some benefit to him. * * * In my opinion the small remaining portion of the thumb will be beneficial in grasping items or articles in conjunction with the fourth and fifth fingers. * * * For all practical purposes I would have to say that the third finger will be of practically no benefit whatsoever, and the second finger of no benefit."

The doctor was then asked, "In other words, for the purpose of disability rating you would limit the injury to the left thumb, first and second fingers of the left hand?" The doctor replied, "Yes, that is the only portion of the hand involved."

When asked if petitioner sustained any damage to the palm of his left hand, the doctor replied, "No, his hand seems to be in good condition, because I was able to on all three fingers bring the tendons forward and suture them together over the amputated portion, and then I was fortunate to get good skin flap."

The plaintiff in error contends that the decision as to the proper award of compensation under our statute in

this case is governed by the rules stated in *Coker v. Armco Drainage Co.,* 192 Tenn. 10, 236 S.W.2d 980. In that case, the petitioner sustained a crushing injury to his left foot which required amputation at the junction of the middle and lower third of the lower limb. There, the petitioner contended that he knew nothing but manual labor and that as a result of the injury and amputation he was unable to perform manual labor and was entitled to compensation for permanent total disability. The Court, in that case, held that under our Workmen's Compensation Law the petitioner was entitled to compensation in accordance with the schedule for the loss of a foot only and quoted with approval from *Phillips v. Diamond Coal Mining Co.,* 175 Tenn. 191, 133 S.W.2d 476, as follows:

"Where the injury is confined to the loss of a single member of the body compensation is limited to the sum which the statute specifically provides for such loss, regardless of the earning capacity of the injured employee." 175 Tenn. 193, 133 S.W.2d 477.

The Court, in both the Phillips and Coker cases, pointed out that in *Russell v. Virginia Bridge & Iron Co.,* 172 Tenn. 268, 111 S.W.2d 1027, and cases following the rule of that case, the injured members were not actually lost and the injuries were greater than the loss of such member would have been. The distinguishing feature between the Russell case and the Coker and Phillips cases was stated to be that in the latter cases the employee actually lost a member covered by the schedule, whereas, in the Russell case, the injury was the crushing of the right ankle and foot, which were not amputated.

The defendant in error, in his brief, relies upon *Claude Henninger Co. v. Bentley,* 205 Tenn. 241, 326 S.W.2d 446, and *United States Fidelity & Guaranty Co. v. Townsend,* 206 Tenn. 592, 335 S.W.2d 830. In neither of these cases was there the loss of a member covered by the schedule. The facts of both of these cases bring them within the rule of *Russell v. Virginia Bridge & Iron Co.,* supra, and not within the rule of *Coker v. Armco Drainage Co.,* supra. In the Townsend case, the Court spoke through Mr. Justice Tomlinson, who also spoke for the Court in *Coker v. Armco Drainage Co.,* supra.

The defendant in error also relies upon *Dickey Mfg. Co. v. Moore,* 208 Tenn. 576, 347 S.W.2d 493. In that case, the employee sustained a crushing blow to the left side of his face with a shovel handle. He lost the sight of his left eye. There was also testimony that he suffered a comminuted fracture of the left third of his face. He suffered dizzy spells and was unable to work. He sustained permanent disability to his head and face. In that case, the injury was by no means confined to the eye. The employee recovered for the loss of his eye and for the additional permanent partial disability he sustained wholly unconnected with his loss of an eye. That case is not authority for the allowance of a recovery for any permanent partial disability to the body as a whole in the present case.

In support of the judgment of the Trial Court, the defendant in error also cites *Standard Glass Co. v. Wallace,* 189 Tenn. 213, 225 S.W.2d 35. There, the controversy was whether the employee sustained a loss of use of his hand or only an injury to his fingers. The Court held the employee's injury extended to his hand and awarded

compensation for 75% permanent partial loss of use of the hand.

In the case now before the Court, the compensation for the loss of the thumb and first and second fingers amounts to 125 weeks compensation. Under the schedule, the loss of the entire hand entitles an employee to compensation for 150 weeks. The compensation allowed for the loss of the fingers amounts to compensation for 83 1/3% of the loss of the entire hand. The statute T.C.A. sec. 50-1007 (c) provides:

"In no case shall the amount received for more than one (1) finger exceed the amount provided in this schedule for the loss of a hand."

■ Our Workmen's Compensation Act does not authorize the award of a recovery for permanent partial disability to the body as a whole in addition to the award for the loss of the specific members under the facts of this case. Neither the Trial Court nor this Court has the right to extend the provisions of the Workmen's Compensation Law beyond the limits provided by the Legislature.

The judgment of the Trial Court is modified so as to remove from the judgment the award of compensation for 20% permanent partial disability to the body as a whole.

■ By its final assignment of error, the plaintiff in error contends that the Trial Court erred in finding and decreeing that the employee was entitled to twelve weeks total temporary disability benefits. There is ample evidence in the record to sustain the finding of the Trial Judge in this respect, and this assignment of error is overruled.

In view of the fact that the employer did not appeal from the award made by the Trial Judge, it is necessary that we follow the procedure outlined in *Bituminous Casualty Co. v. Smith,* 200 Tenn. 13, 288 S.W.2d 913. In that case, the Court modified a compensation award on the appeal of the insurance carrier when the employer did not appeal from the award against him. In that case, at Pages 23 and 24 of 200 Tenn., at page 917 of 288 S.W. 2d, the Court stated:

"The compensation statute also provides, however, that it, the statute, 'shall be given an equitable construction by the courts to the end that the objects and purposes of this law may be realized and attained." Section 50-918 T.C.A. One of the objects of the statute is to fix the amount to which the injured employee is entitled, and to limit the liability of the insurer of the employer to that amount. It would be an inequitable construction of the statute to permit an employer, but not joining the insurer in an appeal from the judgment of the Trial Court, to thereby increase the liability of the insurer beyond that which the law places upon it.

"It is the opinion of this Court, therefore, that it may modify the unappealed from judgment against the employer Elkins to such extent as is necessary to prevent the insurer from paying by reason of said judgment an amount in excess of that to which the insurer is liable under the heretofore announced decision of this Court."

Therefore, in this case, the judgment of the Trial Court is modified so as to award the employee, Scudginton, a judgment against the insurer, General Guaranty Insurance Company, for twelve weeks total temporary dis-

ability benefits together with compensation for 60 weeks for the loss of the left thumb, 35 weeks for the loss of the first finger, and 30 weeks for the loss of the second finger, in conformity with the schedule, and also for the medical expenses allowed by the Trial Judge.

The judgment is further modified by providing that the insurer's liability either to Scudginton, the employee, or to Riddle, the employer, shall be fully satisfied when the insurer has paid the amount for which this Court has adjudged it liable.

The cause is remanded to the Trial Court for the enforcement of this judgment. Except as herein modified, the judgment of the Trial Court is affirmed. The costs are adjudged against the plaintiff in error.